# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| REGINALD ELAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE FOR HSI ASSET CORPORATION TRUST 2006-HEI, MORTGAGE PASS-THROUGH CERTIFICATE, SERIES 2006-HEI., AND NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, ITS/THEIR SUCCESSORS AND/OR ASSIGNS, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS DEUTSCHE BANK TRUST COMPANY AND NEWREZ LLC
d/b/a SHELLPOINT MORTGAGE SERVICING'S INDEX OF DOCUMENTS**

1. **Defendant's Notice of Removal, Exhibit A, and Exhibit B**
   a. **Exhibit A:** Index of all Documents;
   b. **Exhibit A-1:** Original Petition and Application for TRO, filed September 27, 2024;
   c. **Exhibit A-2**: Certificate of Conference, filed September 27, 2024;
   d. **Exhibit A-3:** Temporary Restraining Order, entered September 30, 2024;
   e. **Exhibit A-4**: Registry Deposit Information Sheet, dated October 1, 2024;
   f. **Exhibit A-5:** Motion to Extend TRO and Reschedule Temporary Injunction, filed October 22, 2024;
   g. **Exhibit A-6**: Executed Citation - Newrez LLC d/b/a Shellpoint Mortgage Servicing, issued October 24, 2024;
   h. **Exhibit A-7**: Executed Citation - Deutsche Bank Trust Company, issued October 24, 2024;
   i. **Exhibit A-8**: Defendants' Original Answer to Plaintiff's Original Petition and Application for TRO, filed 11/21/2024;
   j. **Exhibit A-9**: Notice of Trial;
   k. **Exhibit A-10**: Scheduling Order;
   l. **Exhibit A-11**: Docket.
   m. **Exhibit B**: DCAD Appraisal

1

# EXHIBIT A-1

FILED
9/27/2024 7:43 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

Case 3:24-cv-02988-E-BT     Document 1-1     Filed 11/27/24     Page 4 of 136     PageID 10

CAUSE NO. _DC-24-17440_____

| | | |
|---|---|---|
| **REGINALD ELAM,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEUTSCHE BANK TRUST COMPANY,** | § | |
| **NATIONAL ASSOCIATION, as Trustee** | § | **14th____ JUDICIAL DISTRICT** |
| **for HSI Asset Corporation Trust 2006-** | § | |
| **HEI, Mortgage Pass-Through Certificate,** | § | |
| **Series 2006-HE1., and NEWREZ LLC,** | § | |
| **d/b/a SHELLPOINT MORTGAGE** | § | |
| **SERVICING, its/their successors and/or** | § | |
| **assigns,** | § | |
| | § | **OF DALLAS COUNTY, TEXAS** |
| **Defendants.** | | |

## PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Reginald Elam, hereinafter called Plaintiff, complaining of and about Deutsche Bank Trust Company, National Association, as Trustee for HIS Asset Corporation Trust 2006-HEI, Mortgage Pass-Through Certificates, Series 2006-HEI, and Newrez LLC d/b/a Shellpoint Mortgage Servicing its/their successors and/or assigns, as Defendants, and for her claims and causes of action set forth herein below, respectfully shows unto the Court the following.

## I.

## DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends that discovery be conducted under Discovery Level 2.

## II.

## PARTIES AND SERVICE

2.    Plaintiff, Reginal Elam ("Plaintiff"), is an individual whose present address is 222 River Birch Trail, Garland, Texas 75040. The last three digits of Plaintiff's driver's license number are XXX and the last three digits of Plaintiff's social security number are XXX.

3.    Defendant, Deutsche Bank Trust Company, National Association, as Trustee for HIS Asset Corporation Trust 2006-HEI, Mortgage Pass-Through Certificates, Series 2006-HEI ("Deutsche Bank"), is a national banking association doing business in the State of Texas and purports to be the current mortgagee and holder and owner of Plaintiff's mortgage loan made the subject of this suit and Defendant does not maintain a registered agent in the State of Texas nor is Plaintiff aware of any branch office location located in the State of Texas; and therefore, Defendant Deutsche Bank may be served with process pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.044 et seq., by the Texas Secretary of State, Citations Unit, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701, with two (2) copies of the citation and this petition, who may then serve the same upon any authorized officer, director or designated agent of Defendant Deutsche Bank located at its last known home office address of 601 Office Center Drive, Suite 100, Fort Washington, PA 19034.

4.    Defendant, Newrez LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), is a foreign limited liability company doing business in the State of Texas as a mortgage servicer or lender and purports to be the current mortgage servicer of Plaintiff's mortgage servicer made the subject of this suit and may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701. Service of process upon said Defendant as described above can be effectuated by personal delivery to its registered agent identified herein.

## III.

## JURISDICTION AND VENUE

5.     The subject matter in controversy is within the jurisdictional limits of this court.

6.     Plaintiff seeks:

a.     monetary relief of less than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; and,

b.     injunctive relief in the form of a temporary restraining order and temporary injunction.

7.     This court has personal jurisdiction herein because each of the Defendants are Texas residents and/or routinely engage in or transact business in the State of Texas with sufficient minimum contacts.

8.     Venue is proper in Dallas County in this cause pursuant to TEX. CIV. PRAC. & REM. CODE §15.011 et seq., and because this action involves real property and the location of such real property is situated entirely in Dallas County, Texas.

## IV.

## FACTUAL ALLEGATIONS

9.     On June 10, 2005, Plaintiff and Reginald Elam unmarried, purchased the real property and improvements commonly known as 222 River Birch Trail, Garland, Texas 75040, and legally described to wit:

**BEING LOT 3, IN BLOCK 1 OF HIDDEN FOREST ESTATES, AN ADDITION TO THE CITY OF GARLAND, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 2004072, PAGE 16, MAP OF RECORDS OF DALLAS COUNTY, TEXAS:**

which is the Plaintiff's homestead property. **At all relevant and material times hereto, Plaintiff was the fee simple owner of the subject Property**. (emphasis added). A true and

correct copy of Special Warranty Deed With Vendor's Lien recorded as Instrument No. 200503398362 in the official real property records of the Dallas County Clerk's office is attached hereto marked Exhibit "A" and incorporated herein by reference for all purposes.

10.     On the same day, June 10, 2005, Plaintiff and Reginald Elam applied for and obtained two (2) loans from New Century Mortgage Corporation ("original lender") evidenced by first lien adjustable-rate promissory note in the amount of $257,695.00 which was secured by a Deed of Trust of even date to Eldon L. Youngblood, Trustee. A true and correct copy of Deed of Trust recorded as Instrument No.200503398364 in the official real property records of the Dallas County Clerk's office is attached hereto marked Exhibit "B" and incorporated herein by reference for all purposes. Plaintiff also obtained a second lien mortgage loan evidenced by a promissory note in the original principal amount of $64,423.00, which was secured by a second lien purchase money deed of trust of even date to Don W. Ledbetter, Trustee. The First Lien Note and Deed of Trust are made the subject of this suit and are hereinafter collectively referred to as the "Plaintiff's Loan".

11.     Plaintiff made all required monthly loan payments due until on or about 2010 when the monthly mortgage payment increased from $1,200.00 to $2,600.00. Plaintiff reached out for assistance and did not receive any at the time. The loan was then transferred to Wells Fargo and their new lender became America's Servicing.

12.     In 2012, Plaintiff reached out to her new mortgage lender, Wells Fargo, to apply for a loan modification which she was offered with an increasing interest rate beginning at 2% for 3 years, by 2017 the interest would increase by 1% and by 2018 the interest rate would be 3.3750%. A true and correct copy of the Home Affordable Modification Agreement (Deed of Trust) dated August 6, 2013 and recorded as Instrument No. 201500079604 in the official real

property records of the Dallas County Clerk's office is attached hereto marked Exhibit "C" and incorporated herein by reference for all purposes.

13.     Subsequently, Plaintiff started experiencing financial difficulties.

14.     Plaintiff reached out to defendant Deutch Bank several times to see if any assistance or a loan modification was doable as he was struggling to make ends meet. It was at this time he learned that $90,000.00 had been added to the arrearage amount which drastically increased the balance owed. Plaintiff contacted defendant Deutsch Bank and demanded an accounting and explanation and was told that it was a result of his previous request for a loan modification, which made no sense to him whatsoever, nor was he provided with any written breakdown or details.

15.     Plaintiff, still seeking assistance from defendant Deutsch Bank, was denied yet again for any type of assistance. The property was then once again posted for foreclosure on October 5, 2021, Plaintiff filed a lawsuit against Defendant Deutsch Bank under Cause No. DC-21-14480 in the 44th Judicial District Court of Dallas County, Texas, which was then removed by Defendant Deutsch Bank and the prior servicer to Federal Cout under Civil Action No. 3:21-cv-2804 in the U.S. District Court, Northern District of Texas – Dallas division. On March 30, 2023, the case was dismissed with prejudice. A true and correct copy of the Docket Report is attached hereto marked Exhibit "D" and incorporated herein by reference for all purposes.

16.     During the course of the prior litigation, Plaintiff submitted a loan modification but was denied and only offered a short sale. Defendant Deutsch Bank then along with the prior servicer posted the subject property for foreclose sale with a sale date of February 7, 2023. Plaintiff then listed the subject property for sale in hopes to keep a foreclosure off of his credit. Plaintiff asked Defendant Deutsch and the prior servicer if they'd agree to postpone the

foreclosure sale so Plaintiff and his ex had time to sell the subject property to fully payoff the loan. Defendant Deutsch countered and only offered Plaintiff a cash for keys deal and refused to allow Plaintiff time to sell the subject property and proceeded to seek foreclosure of the subject property. Plaintiffs' ex felt as though they had no other option and filed a voluntary Chapter 13 bankruptcy under Civil action number 23-30201-swe13 in the Norther District of Texas, Dallas division which was dismissed on September 6, 2023. A true and correct copy of the Residential Real Estate Listing Agreement and Chapter 13 bankruptcy docket are each attached hereto marked Exhibit "E" and incorporated herein by reference for all purposes.

17.     Sometime thereafter, Defendant Shellpoint became the new servicer for Plaintiff's loan. Plaintiff contacted Defendant Shellpoint to see if there were any loss mitigation options available to him to which he was initially told he was told by defendant Shellpoint he could submit a loan modification application.

18.     On or about August 2024, Plaintiff submitted his loan modification application to defendant Shellpoint.

19.     On or about September 2024, defendant Shellpoint contacted Plaintiff and informed him that his application was missing documents and provided him with a list of documentation that they needed. Plaintiff immediately submitted to defendant Shellpoint the requested documents to which defendant Shellpoint confirmed receipt of.

20.     Plaintiff began receiving advertisements from various investors stating they can help him stop his upcoming foreclosure. Worried, Plaintiff contacted the Helstowski Law Firm to discuss his options and why he was receiving the advertisements.

21.     Plaintiff was absolutely flabbergasted when he was recently informed that his home is once again scheduled for foreclosure sale on October 1, 2024. Plaintiff was under the

belief that his loan modification application was still under review and that a foreclosure sale would not occur as his loan modification application was neither approved or denied. Plaintiff never received any written or verbal communication from defendant Shellpoint that his loan modification application was denied. A true and correct copy of the Notice of Trustee's Sale to evidence the same is attached hereto marked Exhibit "F" and incorporated herein by reference for all purposes.

20.     On or about September 25, 2024, Plaintiff received a phone call from Defendant Shellpoint who was just making sure they were still in contact with Plaintiff and no further information was provided. Further, at no point since Plaintiff has ever been provided with or received any Notice of Default and Intent to Accelerate notice, nor the 30-day period in which to cure any default, as expressly required under paragraph 18 of the Deed of Trust and TEX. PROP. CODE §51.002(d). Moreover, at no point was Plaintiff served with or received the Notie of Substitute Trustee's Sale (Exhibit "F"), rather his undersigned counsel obtained a copy of the same from the Denton County Clerk's office public records search, which notice was also required to be given to Plaintiff pursuant to paragraph 22 of the Deed of Trust and TEX. PROP. CODE §51.002(b).

## V.

### FIRST CAUSE OF ACTION – APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

21.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV above as if fully set forth herein.

22.     Pursuant to Rule 680 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks immediate relief in the form of a Temporary Restraining Order wherein this Court orders,

retrains and prohibits each of the Defendants, and/or any of its/their agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns, from foreclosing or attempting to foreclose upon Plaintiff's homestead property for a period of at least fourteen (14) days until a temporary injunction hearing is held by this Court concerning whether Plaintiff has a probable right of recovery for his various claims and causes of action pleaded herein. There presently exists an imminent threat of irreparable harm to Plaintiff in the form of Defendants Deutch Bank and Shellpoint and Deutsche Bank, and/or its/their agents, employees, attorneys, trustees, or substitute trustee's stated threat and intent to proceed with the foreclosure sale of Plaintiff's homestead property unless this Court immediately restrains such acts or conduct as requested herein.

23.     Moreover, after issuance of a temporary restraining order, and upon notice and a hearing as required by law, Plaintiff further seeks entry of a Temporary Injunction to maintain the status quo and prohibit all of the Defendants, and/or any of its/their agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns, from foreclosing or attempting to foreclose on Plaintiff's homestead property until the merits of Plaintiff's various claims and causes of action as pleaded herein can be fairly and fully adjudicated.

**VI.**

**<u>SECOND CAUSE OF ACTION –</u>**
**<u>BREACH OF CONTRACT AND FAILURE OF CONDITION PRECEDENT</u>**

24.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV and V above as if fully set forth herein.

25.     The acts, conduct, or omissions of Defendant Shellpoint as described herein, *supra*, also constitute a material breach of the Deed of Trust and a failure of condition precedent as to its/their acceleration of the Loan and posting of Plaintiff's homestead property for

foreclosure sale, and which material breach is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

26.     Specifically, the Defendants were required to provide Plaintiff with a Notice of Default and Opportunity to Cure notice as expressly required under paragraph 22 of the Deed of Trust and TEX. PROP. CODE §51.002(d), and failed to provide her with at least 30 days to cure the default before accelerating the Loan and posting the property for foreclosure sale, and such failure to provide said notice constitutes a material breach of the Deed of Trust and a failure of condition precedent that must occur before the power of sale provision in the Deed of Trust can be exercised, and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

## VII.
## THIRD CAUSE OF ACTION -
## STATUTORY FRAUD IN A REAL ESTATE TRANSACTION

27.     Plaintiff hereby incorporate by reference and reallege all material allegations of fact set forth in Sections IV, V, and VI above as if fully set forth herein.

28.     The acts, conduct and/or omissions of Defendants Deutsche Bank and Shellpoint as described herein, *supra,* also constitute statutory fraud in a real estate transaction as defined by TEX. BUS. & COM. Code §27.01 et seq.

29.     Defendants made numerous false representations of material fact to Plaintiff that were made for the purpose of inducing Plaintiff submit a loan modification application with the belief this would stop the upcoming foreclosure sale, and which false representations Plaintiff relied upon his detriment, and which are the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

30.     The Defendants engaged in a pattern of deceit and made numerous material false

representations of fact or promises to Plaintiff, and each of those false representations or promises were made with actual awareness of the falsity thereof, and thereby committed fraud in a real estate transaction and is liable to Plaintiff for all actual exemplary damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this court.

31.     Moreover, as each of the acts, conduct or omissions of each the Defendants that constitute statutory fraud in a real estate transaction as described herein, supra, relate to the transfer of title to real estate, all of those acts, conduct or omissions are false, misleading or deceptive acts or practices as defined by TEX. BUS. & COM. CODE §17.46(b); and therefore, Plaintiff hereby seeks an award of treble or three times the amount of his actual damages sustained and incurred in excess of the minimum jurisdictional limits of this Court.

**VIII.**
**FOURTH CAUSE OF ACTION -**
**VIOLATIONS OF RESPA AND REGULATION X**
**OF THE CODE OF FEDERAL REGULATIONS**

32.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, and VII, above as if fully set forth herein.

33.     The acts, conduct and/or omissions of Defendant Shellpoint, which at all material times hereto was acting in its alleged capacity as "mortgage servicer" of Plaintiff's mortgage loan on behalf of Defendant Deutsche Bank, also constitute violations of RESPA and Regulation X of the Code of Federal Regulations established by the Consumer Financial Protection Bureau, 12 C.F.R. §1024.41 et seq., which became effective as of January 10, 2014, because Defendant SLS committed violations of this statute and those statutory violations are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

34.     Pursuant the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.

§2605(f), Plaintiff has a private right of action providing for remedies for the claimed breaches of Regulation X, including actual damages, costs, statutory damages and attorney's fees.

35.     Plaintiff's mortgage loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1026.41(e)(4), and Defendant Shellpoint is subject to these regulations and does not qualify for the exception for a "small servicer" or "qualified lender" as defined in 12 C.F.R. § 617.700.

36.     Specifically, Defendant Shellpoint's acts, conduct and/or omissions of failing, neglecting or refusing to provide Plaintiff with any written response or assessment of his, complete loan modification application, and failed to advise him of his right to appeal the denial of his modification request, nor provide any written explanation or valid reasons why it had been denied, and instead engaged in "dual-tracking" and proceeded to accelerate the loan and post Plaintiff's homestead property for foreclosure sale each constitute violations of RESPA and Regulation X and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

37.     As each of the acts, conduct and/or omissions of Defendant Shellpoint intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

**IX.**

### FIFTH CAUSE OF ACTION -
### VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

38.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, VII, and VIII above as if fully set forth herein.

39.     Further, the acts, conduct or omissions of Defendant Shellpoint as described herein, *Supra*, which at all material times hereto was acting as a third-party debt collector attempting to collect the debt due another (Defendant Deutsche Bank), which was in default at the time it began servicing the loan, of failing to provide Plaintiff with any written response or reasons for the denial of his loan modification application nor providing his with any right to appeal, and of dramatically increasing the amount of his arrearage balance without explanation or any accounting, and of wholly failing or refusing to ever provide Plaintiff with any Notice of Default and Opportunity to Cure notice or any amount to fully reinstate the loan or any true amount that was actually due and owing also constitute the intentional and/or knowing misrepresentation of the character amount or extent of the debt to be collected, which false representations of material fact Plaintiff relied upon to his detriment and which are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

40.     Specifically, Defendant Shellpoint and/or its/their various officers, directors, agents, attorneys, or employees as described herein, *supra*, constitute violations of the following provisions of the TDCA: §392.301(a)(7)-*threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings*; and §392.301(a)(8)-*threatening to take an action prohibited by law;* and §392.304(a)(8) – *misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding*; and §392.304(a)(19) – *using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer* and which violations are a producing cause of the

actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

41.    As each of the acts, conduct and/or omissions of Defendant Shellpoint that constitute violations of Texas Debt Collection Act were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

## X.

## EXEMPLARY DAMAGES

42.    Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, VII, VIII, and IX above as if fully set forth herein.

43.    Plaintiff would further show that the various acts, conduct and/or omissions of each of the Defendants complained of herein were committed knowingly, willfully, intentionally, and with actual awareness, and with the specific and pre-determined intention of enriching said Defendants at the expense of Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

## XI.

## ATTORNEY'S FEES

44.    Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems

equitable and just, as provided by: a) Section 37.001 et seq. of the Texas Civil Practices and Remedies Code; (b) the Texas Debt Collection Practices Act, TEX. FIN. CODE § 392.001 et seq., (c) RESPA and Regulation X of the Code of Federal Regulations, and (d) common law.

<div align="center">

**XII.**

**<u>JURY DEMAND</u>**

</div>

45.    Plaintiff hereby requests that all issues of fact be tried before a jury.

<div align="center">

**XIII.**

**<u>PRAYER</u>**

</div>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Reginald Elam, respectfully prays that Defendants Deutsche Bank and Shellpoint, and/or each of its/their various agents, attorneys, or employees as described herein, *supra*, each be cited to appear and answer herein, and that Plaintiff be granted immediate relief in the form of a temporary restraining order and temporary injunction preventing the Defendants, and/or any of its/their respective agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns from foreclosing upon Plaintiff's homestead property described herein until the merits of his various claims and causes of action pleaded herein may be fairly adjudicated; and that upon the final trial of this cause, judgment be entered in favor of Plaintiff, and against all Defendants, jointly and/or severally, for Breach of Contract and Failure of Condition Precedent; Statutory Fraud in a Real Estate Transaction; and for violations of RESPA and Regulation X of the Code of Federal Regulations; and for violations of the Texas Debt Collection Act; and for an award of all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits Court, including exemplary damages, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, and for an award of all attorney's fees

and costs of court incurred, and for such other and further relief, at law or in equity, to which

Plaintiff may be  justly entitled.

Respectfully submitted,

**J. GANNON HELSTOWSKI LAW FIRM**

*/s/ **John G. Helstowski***

John G. Helstowski
Texas Bar No. 24078653
5209 Heritage Avenue, Suite 510
Colleyville, Texas 76034
Telephone: (817) 382-3125
Facsimile: (817) 382-1799
Email: jgh@jghfirm.com
Attorney for Plaintiff

## VERIFICATION

STATE OF TEXAS            §
                         §
COUNTY OF DALLAS          §

BEFORE ME, the undersigned notary public, on this day personally appeared REGINALD ELAM who, after being duly sworn upon his oath, testified as follows:

"My name is REGINALD ELAM. I am the Plaintiff named in the attached and foregoing Plaintiffs' Response and Answer to Defendants' First Request for Production, Interrogatories, and Request for Admission to Plaintiffs'. I am over the age of 21 years and have never been convicted of a felony or other crime involving moral turpitude. I have personal knowledge of all of the answers and responses to the Plaintiffs' Response and Answer to Defendants' First Request for Production, Interrogatories, and Request for Admission to Plaintiffs' and hereby state that all of my answers and responses are true and correct.

FURTHER AFFIANT SAYETH NOT."

EXECUTED this _17th_ day of May 2022.

_____
REGINALD ELAM

**SUBSCRIBED AND SWORN BEFORE ME** on this _17th_ day of May, 2022, by PATRICIA RENEE GARDNER, to certify which witness my hand and official seal.

DIANA A BROWN
Notary ID #10818378
My Commission Expires
April 4, 2025

_____
Notary Public in and for the State of Texas
DIANA A. BROWN
Printed Name of Notary Public

My Commission Expires on: _04-04-2025_

(seal)

# CTIC

**3398362**

5282687    $13.00    Deed
06/21/05

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

GF# 8007970 - GH/CTIC

## SPECIAL WARRANTY DEED WITH VENDOR'S LIEN

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS |
| COUNTY OF DALLAS | § | |

That                    Grand Homes 2003, L.P.

(hereinafter called "Grantor," whether one or more, masculine, feminine or neuter) for and in consideration of the sum of TEN AND NO/100 DOLLARS and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and the further consideration of the execution and delivery by

**Reginald Elam, an unmarried person
and
Patricia Renee Gardner, an unmarried person**

whose address is: 222 River Birch Trail, Garland, Texas 75040

(hereinafter called "Grantee," whether one or more, masculine, feminine or neuter) of one certain note of even date herewith in the principal sum of two hundred fifty seven thousand six hundred ninety five and no/100 dollars ($257,695.00), payable to the order of New Century Mortgage Corporation (hereinafter called "Payee," whether one or more, masculine, feminine or neuter) as therein provided, it having advanced said sum at the special instance and request of Grantee as part of the purchase price for the property conveyed hereby, and Payee shall be and the same hereby is subrogated to all of the rights, titles, liens and equities of said Grantor securing the payment of said note as fully as if it were Grantor herein, and in addition to the first and superior vendor's lien retained herein, said note is additionally secured by a deed of trust of even date herewith to Eldon L. Youngblood, Trustee(s), upon the property conveyed hereby, and the further consideration of the execution and delivery by Grantee of one certain note of even date herewith in the principal sum of sixty four thousand four hundred twenty three and no/100 dollars ($64,423.00), payable to the order of New Century Mortgage Corporation as therein provided, which note is secured by a vendor's lien retained herein for the benefit of the holder(s) thereof and is additionally secured by a deed of trust of even date herewith to Eldon L. Youngblood, Trustee(s), upon the property conveyed hereby;

Page 1 of 3

2005120 01445



And by these presents does Grant, Sell and Convey, unto the said Grantee, all that certain property located in Dallas County, Texas, and described as follows:

    Being Lot 3, in Block 1, of HIDDEN FOREST ESTATES, an Addition to the City of Garland, Dallas County, Texas, according to the Map thereof recorded in Volume 2004072, Page 16, Map Records of Dallas County, Texas.

together with all improvements thereon, if any, and all rights, privileges, tenements, hereditaments, rights of way, easements, appendages and appurtenances, in anywise appertaining thereto, and all right, title and interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the above-described property or any part thereof (hereinafter, the "Property").

    This deed is executed and delivered subject to all easements, reservations, conditions, covenants and restrictive covenants as the same appear of record in the office of the County Clerk of the county in which the Property is located, and property taxes from the date hereof and subsequent years, the payment of which Grantee assumes.

    TO HAVE AND TO HOLD the above-described Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee, his, her or its successors, heirs and assigns, as the case may be, forever; and Grantor does hereby bind Grantor and Grantor's successors, heirs, executors and administrators, as the case may be, to Warrant and Forever Defend all and singular the said Property unto the said Grantee and Grantee's successors, heirs and assigns, as the case may be, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, except as to the reservations from and exceptions to conveyance and warranty, by, through, or under Grantor but not otherwise.

    But it is expressly agreed and stipulated that the aforesaid Vendor's Liens are retained and reserved in favor of the payees in said notes against the above described property, premises and improvements until the above-described notes and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall become absolute.

EXECUTED TO BE EFFECTIVE THIS 10th DAY OF JUNE, 2005.

                          Grand Homes 2003, L.P.

By: Grand Texas Homes, Inc., its General Partner

            by: _____
    printed name: _____
        title: _____

2005120 01446

## ACKNOWLEDGMENT

STATE OF TEXAS §
COUNTY OF DALLAS §

THIS INSTRUMENT ACKNOWLEDGED before me, the undersigned authority, on this
_15th_ day of _June_, 2005, by _Kent D. Smith_, _Controller_
(TITLE) of Grand Texas Homes, Inc., the General Partner of Grand Homes 2003, L.P., a Texas
limited partnership, on behalf of, and as the act and deed of, said partnership.

TERESA L. RICHARDSON
Notary Public, State of Texas
My Commission Exp. 08-17-2009

_Teresa L. Richardson_
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Reginald Elam and Patricia Renee Gardner
222 River Birch Trail
Garland, Texas 75040

PREPARED IN THE LAW OFFICE OF:
Hunter & Kramer, P.C.
P. O. Box 3135
McKinney, Texas 75070

20051120 01447

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

2005 JUN 20  AM 9: 52

CREDIT GLOBE
DALLAS CO. TEXAS

2005120 01448

80079970 HH

Return To:
**New Century Mortgage
Corporation**
18400 Von Karman, Suite 1000
Irvine, CA 92612

3398364

5282689        $53.00  Deed of Trust
06/21/05

Prepared By:
**New Century Mortgage
Corporation**
18400 Von Karman, Suite 1000
Irvine, CA 92612

―――――――[Space Above This Line For Recording Data]―――――――

## DEED OF TRUST

### NOTICE OF CONFIDENTIALITY RIGHTS:
If you are a natural person, you may remove or strike any of the following
information from this instrument before it is filed for record in the public
records: your social security number or your driver's license number.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  June 10, 2005
together with all Riders to this document.
(B) "Borrower" is REGINALD ELAM, Unmarried Man
            PATRICIA RENEE GARDNER, An Unmarried Woman

Borrower is the grantor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

·1002351706

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3044  1/ 01

VMP-6(TX) (0311)
Page 1 of 16        Initials:
VMP Mortgage Solutions (800)521-7291

2005 | 20  0 | 451

EXHIBIT

B

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is Eldon L. Youngblood

. Trustee's address is
2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204

(E) "Note" means the promissory note signed by Borrower and dated    June 10,  2005
The Note states that Borrower owes Lender TWO HUNDRED FIFTY-SEVEN THOUSAND SIX
HUNDRED NINETY-FIVE AND 00/100                                                                Dollars
(U.S. $257,695.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Prepayment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(TX) (0311)                          Page 2 of 16          Initials                1002351706
                                                                                    Form 3044   1/01

2005I 20  01452

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County of Dallas
[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]
LOT 3, BLOCK 1 OF HIDDEN FOREST ESTATES, AN ADDITION TO THE CITY OF GARLAND, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 2004072, PAGE 16, MAP RECORDS, DALLAS COUNTY, TEXAS.

Parcel ID Number: 65002619010100100                    which currently has the address of
222 RIVER BIRCH TRL                                                                    [Street]
Garland                                          [City], Texas 75040              [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

1002351706

-6(TX) (0311)                        Page 3 of 16                    Initials: ___        Form 3044  1/01

20051 20 01453

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

1002351706

Initials:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(TX) (0311)                    Page 5 of 16                    Initials: _____                    1002351706
                                                                                                       Form 3044  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender requires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(TX) (0311)

Page 7 of 16

Initials

1002351706

Form 3044   1/01

2005120 01457

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(TX) (0311)                         Page 6 of 16                                    1002351706

                                                                                    Form 3044   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(TX) (0311)                          Page 9 of 18                    Initials _____          1002351706
                                                                                    Form 3044   1/01

2005120 01459

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(TX) (0311)          Page 10 of 16          Initials: [signature]          1002351706

Form 3044 1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(TX) (0311)                          Page 11 of 16                    Initials:                    1002351706

                                                                                                   Form 3044   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(TX) (0311)          Page 12 of 16          1002351706
Form 3044   1/01

20051 20 0 1462

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

-6(TX) (0311)                    Page 13 of 15                    1002351706
                                                                  Form 3044   1/01

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

[x] Purchase Money.
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] Owelty of Partition.
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] Renewal and Extension of Liens Against Homestead Property.
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a Note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] Acknowledgment of Cash Advanced Against Non-Homestead Property.
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

-6(TX) (0311)                     Page 14 of 16          Initials        1002351706

Form 3044   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                    REGINALD ELAM            -Borrower

_____          _____ (Seal)
                                    PATRICIA RENEE GARDNER   -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                            -Borrower

                                                  1002351706

-6(TX) (0311)              Page 15 of 16          Form 3044   1/01

2005120 01465

STATE OF TEXAS
County of Dallas

Before me _the undersigned_ on this day personally appeared

_Reginald Elam Patricia Renee Gardner_

known to me (or proved to me on the oath of
or through _Drivers License_ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this _10_ day of _June 2006_ .

(Seal)



_____
Notary Public

My Commission Expires:

-6(TX) (0311)                    Page 16 of 16          Initials: _____          1002351706
                                                                                Form 3044   1/01

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps)
### 2 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD

THIS ADJUSTABLE RATE RIDER is made this **10th**        day of **June, 2005**
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to
**New Century Mortgage Corporation**
("Lender") of the same date and covering the property described in the Security Instrument and located at:

**222 RIVER BIRCH TRL, Garland, TX 75040**
(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE MAXIMUM RATE
BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of              **5.675 %**. The Note provides for
changes in the interest rate and monthly payments as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)  Change Dates
The interest rate I will pay may change on the first day of **July, 2007**
and on the same day of every 6th month thereafter. Each date on which my interest rate could change is
called an "Interest Rate Change Date."

(B)  The Index
Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a
margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London
market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index
figure available as of the first business day of the month immediately preceding the month in which the
Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Rider (Multistate)          Page 1 of 3                          1002351706
RE-441   (051005)

**(C) Calculation of Changes**

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Four percentage points ( 4.000 %) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Interest Rate Change Date.

(i)  **Interest-Only Period.** The "Interest-only Period" is the period from the date of this Note through July 1, 2010, called the "Amortization Start Date." During the Interest-only Period, my monthly payments will only pay the interest I owe. During the Interest-only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

(ii)  **Amortization Period.** Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

**(D)  Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.175 % or less than 5.675 %.  Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than 12.675 % or less than 5.675 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 11.  GOVERNING LAW - SECURED NOTE

The Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located.  In addition to the protections given to the Note Holder under the Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as the Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under the Note. Some of those conditions are described as follows:

NCMC
Fixed/ARM Six Month LIBOR
Interest Only Rider (Multistate)
RB-441    (051005)

Page 2 of 3

1002351706

20051 20 01468

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER.
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or, if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Reginald Elam_
REGINALD ELAM                    -Borrower                                        -Borrower

_Patricia Renee Gardner_
PATRICIA RENEE GARDNER           -Borrower                                        -Borrower

                                 -Borrower                                        -Borrower

                                 -Borrower                                        -Borrower

*(Sign Original Only)*

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Rider (Multistate)          Page 3 of 3                    1002351706
RE-441    (051005)

2005 1 20 0 1469

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this **10th** day of **June**, **2005**, and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**

(the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWERS RIGHT TO PREPAY**

I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within **2** year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____
**REGINALD ELAM**

_____
**PATRICIA RENEE GARDNER**

_____

_____

NCMC
Prepay Rider - ARM (Multistate)
RE-103   (020500)                    Page 1 of 1                         1002351706

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 10th ............................ day of June, 2005 ............................, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Century Mortgage Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 222 RIVER BIRCH TRL, Garland, TX 75040

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as HIDDEN FOREST ESTATES

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

1002351706

MULTISTATE PUD RIDER- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01

-7R (0411)

Page 1 of 3

Initials:

VMP Mortgage Solutions, Inc. (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: ___

1002351706

-7R (0411)     Page 2 of 3     Form 3150 1/01

2005  20 0.1 47 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
REGINALD ELAH                -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
PATRICIA RENEE GARDNER        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                   -Borrower

                                                              1002351706

-7R (04 11)                   Page 3 of 3                      Form 3150  1/01

2005 20 01473

DALLAS CO., TEXAS
COUNTY CLERK



2005 JUN 20  AM 9: 52

OFFICIAL PUBLIC RECORDS
FILED AND RECORDED

2005120 01474

## ELECTRONICALLY RECORDED  201500079604
## 04/01/2015 10:31:16 AM MOD  1/9

Title: Home Affordable Modification Agreement (DEED OF TRUST)

This Document Prepared By:
JANICE FAULK
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

When recorded mail to: #:8573780
First American Title
Loss Mitigation Title Services 1079.12
P.O. Box 27670
Santa Ana, CA 92799
RE: ELAM - ALTA ENDORSEMENT

Tax/Parcel No. 26262650010030000

_____ [Space Above This Line for Recording Data] _____

| Original Principal Amount: $257,695.00 | Investor Loan No. |
| Unpaid Principal Amount: $257,694.66 | Loan No: (scan barcode) |
| New Principal Amount $348,340.55 | |
| New Money (Cap): $90,645.89 | |

# HOME AFFORDABLE MODIFICATION AGREEMENT (DEED OF TRUST)
## (Step Two of Two-Step Documentation Process)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

Borrower ("I"):[1] REGINALD ELAM, AN UNMARRIED MAN AND PATRICIA RENEE GARDNER, AN UNMARRIED PERSON
Borrower Mailing Address: 222 RIVER BIRCH TRL, GARLAND, TEXAS 75040

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION AGREEMENT - NON GSE
06242013_195
First American Mortgage Services                    Page 1

106 POA

EXHIBIT

C

Lender or Servicer ("Lender"): **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET SECURITIZATION CORPORATION TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE1**
Lender or Servicer Address: **1761 EAST SAINT ANDREW PLACE, SANTA ANA, CA 92705**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **JUNE 10, 2005**
Property Address: **222 RIVER BIRCH TRL., GARLAND, TEXAS 75040**

Legal Description:

**BEING LOT 3, IN BLOCK 1, OF HIDDEN FOREST ESTATES, AN ADDITION TO THE CITY OF GARLAND, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 2004072, PAGE 16, MAP RECORDS OF DALLAS COUNTY, TEXAS.**

**Prior instrument reference: Recorded on JUNE 21, 2005 in INSTRUMENT NO. 3398364, of the Official Records of DALLAS COUNTY, TEXAS**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.
. I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  My Representations and Covenants. I certify, represent to Lender, and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B.  I live in the Property as my principal residence, and the Property has not been condemned; (i) I lived in the Property as a principal residence immediately prior to my displacement, or (ii) I intend to re-occupy the Property as a principal residence in the future, or (iii) I do not own any single-family real estate other than the Property, or (iv) the Property has not been condemned; The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned.

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program")).

    D.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

E. 'If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

F. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

   C. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **DECEMBER 1, 2012** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **DECEMBER 1, 2012.**

   A. The Maturity Date will be: **NOVEMBER 1, 2052.**

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not credited to my Loan. The new principal balance of my Note will be $348,340.55 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $31,095.29 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $25,995.55 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of AUGUST 1, 2012, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing

Principal Balance" and this amount is **$317,245.26**. Interest at the rate of **2.0000%** will begin to accrue on the Interest Bearing Principal Balance as of **NOVEMBER 1, 2012** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **DECEMBER 1, 2012**. My payment schedule for the Modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|------------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 2.0000% | 11/01/2012 | $960.70 | $657.75 May adjust periodically | $1,618.45 May adjust periodically | 12/01/2012 | 60 |
| 6 | 3.0000% | 11/01/2017 | $1,116.11 | May adjust periodically | May adjust periodically | 12/01/2017 | 12 |
| 7-40 | 3.3750% | 11/01/2018 | $1,176.25 | May adjust periodically | May adjust periodically | 12/01/2018 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed

this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is

fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

K. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

L. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentatin the Lender deems necessary. If the Original Promissory Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

M. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

N. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender has executed this Agreement.

WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET SECURITIZATION CORPORATION TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE1

By _Elizabete A. Gizaw_    8-16-13    **Elizabete A. Gizaw**

(print name)    Vice President Loan Documentation

(title)    Date

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

STATE OF _Minnesota_    COUNTY OF _Dakota_

The instrument was acknowledged before me this _08/16/2013_ by

_Elizabete Gizaw_    the

**Vice President Loan Documentation**    of WELLS FARGO BANK, N.A. AS

ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR

HSI ASSET SECURITIZATION CORPORATION TRUST 2006-HE1, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2006-HE1, a **Vice President Loan Documentation**, on behalf of said

corporation.

_[signature]_

Notary Public

JAMIE LYNN VON BARGEN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2016

Printed Name _Jamie Lynn Von Bargen_

My commission expires: _01/31/2016_

THIS DOCUMENT WAS PREPARED BY:
**JANICE FAULK**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

HOME AFFORDABLE MODIFICATION AGREEMENT - NON
GSE06242013_195
First American Mortgage Services    Page 7

106 POA

In Witness Whereof, I have executed this Agreement

_Reginald Elam_ (Seal)          _Patricia Renee Gardner_ (Seal)
Borrower                                Borrower
REGINALD ELAM                        PATRICIA RENEE GARDNER
         _8-6-2013_
_____              _____
Date                                   Date

_____ (Seal)      _____ (Seal)
Borrower                                Borrower

_____              _____
Date                                   Date

_____ (Seal)      _____ (Seal)
Borrower                                Borrower

_____              _____
Date                                   Date

[Space Below This Line for Acknowledgments]

## BORROWER ACKNOWLEDGMENT

State of __Texas__

County of __Dallas__

This instrument was acknowledged before me on __August 6, 2013__ by **REGINALD ELAM**, **PATRICIA RENEE GARDNER**

_Johana R. Cleveland_
(Signature of Officer)
_Notary Public State of Texas_
(Title of Officer)
My commission expires: __February 11, 2014__

JOJUANA ROCHELLE CLEVELAND
Notary Public, State of Texas
My Commission Expires
February 11, 2014

Lender: **WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET SECURITIZATION CORPORATION TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE1**

Loan Number: (scan barcode)
Loan Amount: $348,340.55

Borrower: **REGINALD ELAM, PATRICIA RENEE GARDNER**
Address: **222 RIVER BIRCH TRL, GARLAND, TEXAS 75040**

## TEXAS LOAN AGREEMENT NOTICE

Section 26.02(b) of the Texas Business and Commerce Code provides as follows:

> A Loan agreement in which the amount involved in the Loan agreement exceeds $50,000.00 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

You are hereby notified that:

> The written Loan agreement to which this notice relates to, represents the final agreement between parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreement of the parties.

> There are no unwritten oral agreements between the parties

LENDER: **WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET SECURITIZATION CORPORATION TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE1**
By: _Ezabeth A. Cozew_  Vice President Loan
Date: _8-16-15_  Documentation

_Reginald Elam_  8-6-2013                _Patricia Renee Gardner_  8/6/13
Borrower _____ Date                 Borrower _____ Date
**REGINALD ELAM**                        **PATRICIA RENEE GARDNER**

Borrower _____ Date                 Borrower _____ Date

Borrower _____ Date                 Borrower _____ Date

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**04/01/2015 10:31:16 AM**
**$58.00**
**201500079604**

First American Mortgage Services

106 POA

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:21-cv-02804-G-BN

Gardner v. Specialized Loan Servicing LLC et al
Assigned to: Senior Judge A. Joe Fish
Referred to: Magistrate Judge David L. Horan
Case in other court: 44th Judicial District Court, Dallas County,
                Texas, DC-21-14480
Cause: 28:1441 Petition for Removal

Date Filed: 11/11/2021
Date Terminated: 03/30/2023
Jury Demand: Plaintiff
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Federal Question

**Plaintiff**

**Patricia Renee Gardner**           represented by   **John Gannon Helstowski**
                                                J Gannon Helstowski Law Firm
                                                5209 Heitage Avenue, Suite 510
                                                Colleyville, TX 76034
                                                817-382-3125
                                                Fax: 817-382-1799
                                                Email: jgh@jghfirm.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Reginald Elam**                         represented by   **John Gannon Helstowski**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Specialized Loan Servicing LLC**      represented by   **Branch M Sheppard**
                                                Galloway Johnson Tompkins Burr & Smith
                                                1301 McKinney Suite 1400
                                                Houston, TX 77010
                                                713-599-0700
                                                Fax: 713-599-0777
                                                Email: bsheppard@gallowaylawfirm.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Berenice Medellin Pruettiangkura**
                                                Galloway Johnson Tompkins Burr & Smith
                                                14643 Dallas Parkway
                                                Suite 635
                                                Dallas, TX 75254
                                                214-545-6389
                                                Fax: 214-442-7973



EXHIBIT
D

Email: bmedellin@gallowaylawfirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deutsche Bank Trust Company National Association**
*as Trustee for HIS Asset Corporation Trust 2006-HEI, Mortgage Pass-Through Certificate, Series 2006- HEI, its/their successors and/or assigns*

represented by **Branch M Sheppard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Berenice Medellin Pruettiangkura**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/11/2021 | 1 | NOTICE OF REMOVAL WITH JURY DEMAND filed by Specialized Loan Servicing LLC. (Filing fee $402; receipt number 0539-12378160) In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Cover Sheet) (Sheppard, Branch) (Entered: 11/11/2021) |
| 11/11/2021 | 2 | New Case Notes: A filing fee has been paid. CASREF case referral set and case referred to Magistrate Judge Horan (see Special Order 3). Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. (mla) (Entered: 11/12/2021) |
| 11/16/2021 | 3 | ORDER REQUIRING 26(F) REPORT: Plaintiff and Defendant's counsel must confer telephonically or in person not later than November 30, 2021. By December 13, 2021, the parties must submit a joint written Rule 26(f) report containing a proposed discovery plan. (Ordered by Magistrate Judge David L. Horan on 11/16/2021) (mcrd) (Entered: 11/16/2021) |
| 11/16/2021 | 4 | STANDING ORDER ON DISCOVERY AND OTHER NON-DISPOSITIVE MOTIONS. (Ordered by Magistrate Judge David L. Horan on 11/16/2021) (mcrd) (Entered: 11/16/2021) |
| 11/17/2021 | 5 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Patricia Renee Gardner. (Helstowski, John) (Entered: 11/17/2021) |
| 12/13/2021 | 6 | Joint STATUS REPORT *REGARDING CONTENTS OF SCHEDULING ORDER* filed by Patricia Renee Gardner. (Helstowski, John) (Entered: 12/13/2021) |
| 12/14/2021 | 7 | NOTICE of to Court re: 6 Status Report filed by Specialized Loan Servicing LLC (Attachments: # 1 Exhibit(s) Exhibit A, # 2 Exhibit(s) Exhibit B) (Sheppard, Branch) (Entered: 12/14/2021) |
| 12/15/2021 | 8 | STANDING ORDER ON DISCOVERY INITIAL SCHEDULING ORDER: Joinder of Parties due by 1/31/2022. Amended Pleadings due by 2/28/2022. Discovery due by |

| | | |
|---|---|---|
| | | 11/1/2022. Motions due by 9/30/2022. (Ordered by Magistrate Judge David L. Horan on 12/15/2021) (mjr) (Entered: 12/15/2021) |
| 12/16/2021 | 9 | NOTICE of Attorney Appearance by Berenice Medellin Pruettiangkura on behalf of Specialized Loan Servicing LLC. (Filer confirms contact info in ECF is current.) (Pruettiangkura, Berenice) (Entered: 12/16/2021) |
| 01/31/2022 | 10 | Unopposed MOTION for Leave to Join Reginald Elam as a Party Plaintiff filed by Patricia Renee Gardner (Attachments: # 1 Proposed Order). Party Reginald Elam added. (Helstowski, John) (Entered: 01/31/2022) |
| 02/01/2022 | 11 | ORDER granting 10 Plaintiff's Unopposed Motion for Leave to Join Reginald Elam as a Party Plaintiff. (Ordered by Magistrate Judge David L. Horan on 2/1/2022) (mcrd) (Entered: 02/01/2022) |
| 09/30/2022 | 12 | MOTION for Summary Judgment filed by Specialized Loan Servicing LLC (Attachments: # 1 Proposed Order Proposed Order Granting Defendants' Motion for Summary Judgment) (Sheppard, Branch) (Entered: 09/30/2022) |
| 09/30/2022 | 13 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 12 MOTION for Summary Judgment (Attachments: # 1 Exhibit(s) Exhibit 1, # 2 Exhibit(s) Exhibit 2, # 3 Exhibit(s) Exhibit 3, # 4 Exhibit(s) Exhibit 4, # 5 Exhibit(s) Exhibit 5, # 6 Exhibit(s) Exhibit 6, # 7 Exhibit(s) Exhibit 7, # 8 Exhibit(s) Exhibit 8) (Sheppard, Branch) (Entered: 09/30/2022) |
| 09/30/2022 | 14 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 13 Brief/Memorandum in Support of Motion, (Attachments: # 1 Exhibit(s) Exhibit 9) (Sheppard, Branch) (Entered: 09/30/2022) |
| 09/30/2022 | 15 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 13 Brief/Memorandum in Support of Motion, (Attachments: # 1 Exhibit(s) Exhibit 11) (Sheppard, Branch) (Entered: 09/30/2022) |
| 09/30/2022 | 16 | Appendix in Support filed by Specialized Loan Servicing LLC re 13 Brief/Memorandum in Support of Motion, (Sheppard, Branch) (Entered: 09/30/2022) |
| 09/30/2022 | 17 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 13 Brief/Memorandum in Support of Motion, (Attachments: # 1 Exhibit(s), # 2 Exhibit(s)) (Sheppard, Branch) (Entered: 10/01/2022) |
| 10/01/2022 | 18 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 12 MOTION for Summary Judgment (Attachments: # 1 Exhibit(s) Exhibit 10, # 2 Exhibit(s) Exhibit 12) (Sheppard, Branch) (Entered: 10/01/2022) |
| 10/03/2022 | 19 | SUPPLEMENTAL SCHEDULING ORDER re: 12 MOTION for Summary Judgment . Responses due by 10/31/2022. Replies due by 11/15/2022. (Ordered by Magistrate Judge David L. Horan on 10/3/2022) (oyh) (Entered: 10/03/2022) |
| 10/11/2022 | 20 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 12 MOTION for Summary Judgment (Attachments: # 1 Exhibit(s) Exhibit 1, # 2 Exhibit(s) Exhibit 2, # 3 Exhibit(s).Exhibit 3, # 4 Exhibit(s) Exhibit 4, # 5 Exhibit(s) Exhibit 5, # 6 Exhibit(s) Exhibit 6, # 7 Exhibit(s) Exhibit 7, # 8 Exhibit(s) Exhibit 8, # 9 Exhibit(s) Exhibit 9, # 10 Exhibit(s) Exhibit 10, # 11 Exhibit(s) Exhibit 10, # 12 Exhibit(s) Exhibit 10, # 13 Exhibit(s) Exhibit 11, # 14 Exhibit(s) Exhibit 12, # 15 Exhibit(s) Exhibit 12, # 16 Exhibit(s) Exhibit 13, # 17 Exhibit(s) Exhibit 14, # 18 Exhibit(s) Exhibit 15) (Sheppard, Branch) (Entered: 10/11/2022) |
| 10/11/2022 | 21 | MOTION for Leave to File Supplement to Defendants' Motion for Summary Judgment [Doc. 12] and Brief in Support of Motion for Summary Judgment [Doc. 13] filed by |

| | | |
|---|---|---|
| | | Specialized Loan Servicing LLC (Sheppard, Branch) (Entered: 10/11/2022) |
| 10/11/2022 | 22 | Brief/Memorandum in Support filed by Specialized Loan Servicing LLC re 21 MOTION for Leave to File Supplement to Defendants' Motion for Summary Judgment [Doc. 12] and Brief in Support of Motion for Summary Judgment [Doc. 13] (Sheppard, Branch) (Entered: 10/11/2022) |
| 10/13/2022 | 23 | ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENT TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: IT IS FURTHER ORDERED that Defendants' Supplement to Defendants' Motion for Summary Judgment [Doc. 20] and the same hereby shall be included in Defendants' Motion for Summary Judgment [Doc. 12] and Brief in Support of Motion for Summary Judgment [Doc. 13] on the Docket in this civil action. (Ordered by Magistrate Judge David L. Horan on 10/13/2022) (svc) (Entered: 10/14/2022) |
| 10/31/2022 | 24 | MOTION for Extension of Time to File Response/Reply to 12 MOTION for Summary Judgment filed by Reginald Elam, Patricia Renee Gardner with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Helstowski, John) (Entered: 10/31/2022) |
| 11/03/2022 | 25 | ORDER granting 24 Unopposed Motion to Extend Time to Respond to Defendants' Motion for Summary Judgment. Responses due by 11/7/2022. Replies due by 11/22/2022. (Ordered by Magistrate Judge David L. Horan on 11/3/2022) (mcrd) (Entered: 11/03/2022) |
| 11/07/2022 | 26 | RESPONSE filed by Reginald Elam, Patricia Renee Gardner re: 12 MOTION for Summary Judgment (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) A-1, # 3 Exhibit(s) A-2, # 4 Exhibit(s) A-3) (Helstowski, John) (Entered: 11/07/2022) |
| 11/22/2022 | 27 | REPLY filed by Specialized Loan Servicing LLC re: 12 MOTION for Summary Judgment , 21 MOTION for Leave to File Supplement to Defendants' Motion for Summary Judgment [Doc. 12] and Brief in Support of Motion for Summary Judgment [Doc. 13] (Sheppard, Branch) (Entered: 11/22/2022) |
| 01/11/2023 | 28 | ORDER: On November 11, 2021, Defendant filed a notice of removal but did not file a Certificate of Interested Persons. By February 1, 2023, Defendants must comply with Local Civil Rule 81.1(a)(4)(D) so that the Court can ensure that recusal is not required in this case. (Ordered by Magistrate Judge David L. Horan on 1/11/2023) (mcrd) (Entered: 01/11/2023) |
| 01/11/2023 | 29 | ORDER: On November 11, 2021, Defendants filed a notice of removal. More than twenty-one have passed but Plaintiff Reginald Elam did not file a Certificate of Interested Persons. By February 1, 2023, Plaintiff Reginald Elam must comply with Local Civil Rule 81.2 so that the Court can ensure that recusal is not required in this case. (Ordered by Magistrate Judge David L. Horan on 1/11/2023) (mcrd) (Entered: 01/11/2023) |
| 01/11/2023 | 30 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Specialized Loan Servicing LLC. (Clerk QC note: No affiliate entered in ECF). (Sheppard, Branch) (Entered: 01/11/2023) |
| 01/12/2023 | 31 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Reginald Elam, Patricia Renee Gardner. (Clerk QC note: No affiliate entered in ECF). (Helstowski, John) (Entered: 01/12/2023) |
| 02/06/2023 | 32 | SUGGESTION OF BANKRUPTCY Upon the Record by Reginald Elam, Patricia Renee Gardner. (Attachments: # 1 Exhibit(s) A) (Helstowski, John) (Entered: 02/06/2023) |
| 02/07/2023 | 33 | ELECTRONIC ORDER: Plaintiff Patricia Renee Gardner has filed a Suggestion of Bankruptcy 32 reporting that "Patricia Renee Gardner, who is the owner and an occupant of the subject property and claims an undivided fee simple title interest in the subject property, filed a voluntary petition under the United States Bankruptcy Code, 11. U.S.C. |

§101 et seq., on February 4, 2023" and that "[t]he case was filed in the United States Bankruptcy Court for the Northern District of Texas Dallas Division, under Case Number 23-30201." Dkt. No. 32 at 1.

Gardner asserts that, "[p]ursuant to 11 U.S.C. §362 et seq., the filing of a petition in bankruptcy acts as a stay against all other judicial proceedings regarding the debtor and/or debts of the debtor's estate" and that "the instant proceeding should be stayed and/or administratively closed pending resolution of this matter in the bankruptcy court." Id. at 2.

The parties are directed to each, by Tuesday, February 21, 2023, file a supplemental brief setting forth their views on whether -- based on the claims in and the circumstances and posture of this case -- any automatic stay applies to claims brought by a debtor (here, Plaintiff Patricia Renee Gardner) or a debtor's co-plaintiff (here, Plaintiff Reginald Elam). See, e.g., Jorrie v. Bank of N.Y. Mellon Trust Co., N.A., 740 F. App'x 809, 812 & n.2 (5th Cir. 2018) (per curiam) (observing that the plaintiff's "bankruptcy filing did not trigger an automatic stay of [that] litigation... because... 11 U.S.C. § 362(a)'s automatic stay applies only to judicial proceedings that are 'against the debtor'" (quoting Section 362(a); cleaned up)); Yammine v. PNC Bank Nat'l Ass'n, No. 3:19-cv-138-K-BN, 2020 WL 4720095, at *1-*2 (N.D. Tex. July 9, 2020) ("no automatic stay provision of the Bankruptcy Code prevents this case from proceeding" where "the right to foreclose on property that may be the subject of a bankruptcy estate is not at issue in this case" and Plaintiff's "operative complaint merely seeks damages related to her misrepresentation claims" and "Defendants have not filed counterclaims"), report & recommendation adopted, 2020 WL 4698326 (N.D. Tex. Aug. 12, 2020).

(Ordered by Magistrate Judge David L. Horan on 2/7/2023.) (Entered: 02/07/2023)

| | | |
|---|---|---|
| 02/17/2023 | 34 | STANDING ORDER ON FILING MATERIALS UNDER SEAL. (Ordered by Magistrate Judge David L. Horan on 2/17/2023) (mcrd) (Entered: 02/17/2023) |
| 02/21/2023 | 35 | Brief/Memorandum in Support filed by Deutsche Bank Trust Company National Association, Specialized Loan Servicing LLC re 33 Order Setting Deadline/Hearing (Sheppard, Branch) (Entered: 02/21/2023) |
| 02/21/2023 | 36 | Supplemental Document by Reginald Elam, Patricia Renee Gardner as to 33 Order Setting Deadline/Hearing . (Attachments: # 1 Exhibit(s) A) (Helstowski, John) (Entered: 02/21/2023) |
| 03/08/2023 | 37 | FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE: The Court should grant 12 Defendants motion for summary judgment on Plaintiffs claims; should order that Defendants counterclaim and request for attorneys fees and costs against Plaintiff Gardner are stayed; and should grant a discretionary stay as to Defendants counterclaim and request for attorneys fees and costs against Plaintiff Elam. (Ordered by Magistrate Judge David L. Horan on 3/8/2023) (svc) (Entered: 03/08/2023) |
| 03/30/2023 | 38 | ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE re: 12 Motion for Summary Judgment. (Ordered by Senior Judge A. Joe Fish on 3/30/2023) (sxf) (Entered: 03/30/2023) |
| 03/30/2023 | 39 | FINAL JUDGMENT AS TO CERTAIN CLAIMS: All of the plaintiffs' claims against the defendants are DISMISSED with prejudice. The defendants' counterclaim and request for attorneys' fees and costs against the plaintiff Patricia Renee Gardner are STAYED pursuant to the 11 U.S.C. § 362 automatic stay. (Ordered by Senior Judge A. Joe Fish on 3/30/2023) (sxf) (Entered: 03/30/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/25/2024 12:21:17 | | | |
| **PACER Login:** | ▮▮▮▮▮ | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cv-02804-G-BN |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |



11/2/2015

# Information About Brokerage Services
*Texas law requires all real estate licensees to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

**TYPES OF REAL ESTATE LICENSE HOLDERS:**
- **A BROKER** is responsible for all brokerage activities, including acts performed by sales agents sponsored by the broker.
- **A SALES AGENT** must be sponsored by a broker and works with clients on behalf of the broker.

**A BROKER'S MINIMUM DUTIES REQUIRED BY LAW (A client is the person or party that the broker represents):**
- Put the interests of the client above all others, including the broker's own interests;
- Inform the client of any material information about the property or transaction received by the broker;
- Answer the client's questions and present any offer to or counter-offer from the client; and
- Treat all parties to a real estate transaction honestly and fairly.



**A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:**

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH - INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of each party to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:
- Must treat all parties to the transaction impartially and fairly;
- May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with, provide opinions and advice to, and carry out the instructions of each party to the transaction.
- Must not, unless specifically authorized in writing to do so by the party, disclose:
  - that the owner will accept a price less than the written asking price;
  - that the buyer/tenant will pay a price greater than the price submitted in a written offer; and
  - any confidential information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH:**
- The broker's duties and responsibilities to you, and your obligations under the representation agreement.
- Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| Ultima Real Estate | 9008084 | Ultimare.com | (972)980-9393 |
|---|---|---|---|
| Licensed Broker /Broker Firm Name or Primary Assumed Business Name | License No. | Email | Phone |
| Paul Bermudez | 9008084 | Paul@ultimare.com | (972)980-9393 |
| Designated Broker of Firm | License No. | Email | Phone |
| Craig Gant | 0464125 | Craig.ultimare@gmail.com | (972)980-9393 |
| Licensed Supervisor of Sales Agent/ Associate | License No. | Email | Phone |
| Jojuana Cleveland | 0515683 | jojuanasellshomes@yahoo.com | 214.682.7261 |
| Sales Agent/Associate's Name | License No. | Email | Phone |

PG        RE        01/31/2023   01/31/2023
Buyer/Tenant/Seller/Landlord Initials        Date

---

**Regulated by the Texas Real Estate Commission**

**Information available at www.trec.texas.gov**

IABS 1-0 Date

# ⚡ TEXAS REALTORS

## RESIDENTIAL REAL ESTATE LISTING AGREEMENT
## EXCLUSIVE RIGHT TO SELL

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2022

**1. PARTIES:** The parties to this agreement (this Listing) are:

Seller: **Patricia Gardner**
       **Reginald Elam**
    Address: **222 River Birch Trail**
    City, State, Zip: **Garland, TX 75044**
    Phone: **(469)438-8464**
    Email/Fax: **Patgardner2013@gmail.com**    Email/Fax:

Broker: **Ultima Real Estate**
    Address: **5220 Spring Valley Road Ste. 160**
    City, State, Zip: **Dallas, TX  75254**
    Phone: **214.682.7261**
    Email/Fax: **Jojuanasellshomes@yahoo.com**    Email/Fax: **214-242-5413**

Seller appoints Broker as Seller's sole and exclusive real estate agent and grants to Broker the exclusive right to sell the Property.

**2. PROPERTY:** "Property" means the land, improvements, and accessories described below, except for any described exclusions.

A. <u>Land</u>: Lot     **3**    , Block   **1**  , **Hidden Forest Estates**
    Addition, City of       **Garland**
in     **Dallas**    County, Texas known as **222 River Birch Trl  75040**
        (address/zip code),
or as described on attached exhibit. *(If Property is a condominium, attach Condominium Addendum.)*

B. <u>Improvements</u>: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above-described real property.

C. <u>Accessories</u>: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above-ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. <u>Exclusions</u>: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: **Refrigerator, Mounted TV's and accessories.**

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate _JC_ and Seller _PG_ , _RE_     Page 1 of 11

**222 River Birch Trail**
Residential Listing concerning _____**Garland, TX  75040**_____

E. Owners' Association: The Property ☒ is ☐ is not subject to mandatory membership in a property owners' association.

3. **LISTING PRICE:** Seller instructs Broker to market the Property at the following price: $ .675,000.00 (Listing Price). Seller agrees to sell the Property for the Listing Price or any other price acceptable to Seller. Seller will pay all typical closing costs charged to sellers of residential real estate in Texas (seller's typical closing costs are those set forth in the residential contract forms promulgated by the Texas Real Estate Commission).

4. **TERM:**

A. This Listing begins on _____**March 1, 2023**_____ and ends at 11:59 p.m. on _____**August 31, 2023**_____ .

B. If Seller enters into a binding written contract to sell the Property before the date this Listing begins and the contract is binding on the date this Listing begins, this Listing will not commence and will be void.

5. **BROKER COMPENSATION:**

A. When earned and payable, Seller will pay Broker:

☒ (1) ____6.000____ % of the sales price.

☐ (2) _____.

B. Earned: Broker's compensation is earned when any one of the following occurs during this Listing:
   (1) Seller sells, exchanges, options, agrees to sell, agrees to exchange, or agrees to option the Property to anyone at any price on any terms;
   (2) Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy the Property at the Listing Price or at any other price acceptable to Seller; or
   (3) Seller breaches this Listing.

C. Payable: Once earned, Broker's compensation is payable either during this Listing or after it ends at the earlier of:
   (1) the closing and funding of any sale or exchange of all or part of the Property;
   (2) Seller's refusal to sell the Property after Broker's compensation has been earned;
   (3) Seller's breach of this Listing; or
   (4) at such time as otherwise set forth in this Listing.

   Broker's compensation is not payable if a sale of the Property does not close or fund as a result of: (i) Seller's failure, without fault of Seller, to deliver to a buyer a deed or a title policy as required by the contract to sell; (ii) loss of ownership due to foreclosure or other legal proceeding; or (iii) Seller's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the sale of the Property.

D. Other Compensation:
   (1) Breach by Buyer Under a Contract: If Seller collects earnest money, the sales price, or damages by suit, compromise, settlement, or otherwise from a buyer who breaches a contract for the sale of the Property entered into during this Listing, Seller will pay Broker, after deducting attorney's fees and collection expenses, an amount equal to the lesser of one-half of the amount collected after deductions or the amount of the Broker's Compensation stated in Paragraph 5A. Any amount paid under this Paragraph 5D(1) is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate _JC_ and Seller _PG_ , _RE_    Page 2 of 11

Ultima Real Estate, 5339 Alpha Road Ste. 120 Dallas TX 75240                                     Phone: 214.682.7261    Fax: .214-242-5413    Patricia Gardner
Jojuana Cleveland                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com



**222 River Birch Trail**
Residential Listing concerning _____**Garland, TX  75040**_____

    (2) <u>Service Providers</u>: If Broker refers Seller or a prospective buyer to a service provider (for example, mover, cable company, telecommunications provider, utility, or contractor) Broker may receive a fee from the service provider for the referral. Any referral fee Broker receives under this Paragraph 5D(2) is in addition to any other compensation Broker may receive under this Listing.

    (3) <u>Other Fees and/or Reimbursable Expenses</u>: **Ultima Real Estate charges an administrative fee in the amount of $425 to the Seller at closing.**

E. <u>Protection Period</u>:

    (1) "Protection period" means that time starting the day after this Listing ends and continuing for _____**60**_____ days. "Sell" means any transfer of any fee simple interest in the Property whether by oral or written agreement or option.

    (2) Not later than 10 days after this Listing ends, Broker may send Seller written notice specifying the names of persons whose attention was called to the Property during this Listing. If Seller agrees to sell the Property during the protection period to a person named in the notice or to a relative of a person named in the notice, Seller will pay Broker, upon the closing of the sale, the amount Broker would have been entitled to receive if this Listing were still in effect.

    (3) This Paragraph 5E survives termination of this Listing: This Paragraph 5E will not apply if:
       (a) Seller agrees to sell the Property during the protection period;
       (b) the Property is exclusively listed with another broker who is a member of Texas REALTORS® at the time the sale is negotiated; and
       (c) Seller is obligated to pay the other broker a fee for the sale.

F. <u>County</u>: All amounts payable to Broker are to be paid in cash in **Dallas** _____ County, Texas.

G. <u>Escrow Authorization</u>: Seller authorizes, and Broker may so instruct, any escrow or closing agent authorized to close a transaction for the purchase or acquisition of the Property to collect and disburse to Broker all amounts payable to Broker under this Listing.

**6. LISTING SERVICES:**

    **<u>Notice Regarding Public Marketing</u>: If the Property is publicly marketed, MLS rules require that Broker file this Listing with the Multiple Listing Services (MLS) within one (1) business day. Public marketing includes, but is not limited to, fliers displayed in the windows, yard signs, digital marketing on public-facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and other applications available to the general public.**

A. <u>Filing</u>: Seller instructs Broker as follows: *(Check 1 or 2 only.)*

    ☒ (1) Broker will file this Listing with one or more Multiple Listing Services (MLS) according to the following: *(Check only one box.)*

       ☐ (a) Broker will file this Listing with one or more Multiple Listing Services (MLS) by the earlier of the time required by MLS rules or 5 days after the date this Listing begins: Seller authorizes Broker to submit information about this Listing and the sale of the Property to the MLS.

       ☒ (b) Seller instructs Broker not to file this Listing with one or more Multiple Listing Services (MLS) until ___**30**___ days after the date this Listing begins for the following purpose(s): **Seller to make needed repairs and prepare the home for sale.**
       (NOTE: Do not check if prohibited by Multiple Listing Service(s).)

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate  and Seller PG , RE    Page 3 of 11

Ultima Real Estate, 5339 Alpha Road Ste. 120 Dallas TX 75240         Phone: 214.682.7261    Fax: 214-242-5413    Patricia Gardner
Jojuana Cleveland       Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

**222 River Birch Trail**
**Garland, TX 75040**

**Notice Regarding MLS Rules:** MLS rules require Broker to accurately and timely submit all information the MLS requires including final closing of sales and sales prices. MLS rules may require that the information be submitted to the MLS throughout the time the Listing is in effect. Subscribers to the MLS and appraisal districts may use the information for market evaluation or appraisal purposes. Subscribers are other brokers, agents, and real estate professionals such as appraisers. Any information filed with the MLS becomes the property of the MLS for all purposes. **Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.**

☐ (2) Broker will not file this Listing with any Multiple Listing Services (MLS) or other listing service.

**Seller acknowledges and understands that if this option is checked: (1) <u>the Property will not be publicly marketed</u>; (2) the Property will not be included in the MLS database available to real estate agents and brokers from other real estate offices who subscribe to and participate in the MLS, and their buyer clients may not be aware that the Property is offered for sale; (3) the Property will not be included in the MLS's download to various real estate Internet sites that are used by the public to search for property listings; and (4) real estate agents, brokers, and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property. <u>Seller further acknowledges and understands that if this option is checked, and the Property is publicly marketed by anyone, including Seller, MLS rules require that Broker file this Listing with the MLS within one (1) business day.</u>**

B. <u>Listing Content</u>: If Broker files this Listing under Paragraph 6A, the parties agree to the following:

(1) <u>Definitions:</u>
   (a) "Listing Content" means all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other copyrightable elements relating to the Property.
   (b) "Seller Listing Content" means Listing Content provided by Seller to Broker or Broker's associates.
   (c) "Broker Listing Content" means Listing Content that is otherwise obtained or produced by Broker or Broker's associates in connection with this Listing.

(2) Seller grants Broker a non-exclusive, irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and reproduce the Seller Listing Content, to prepare derivative works of the Seller Listing Content, and to distribute the Seller Listing Content, including any derivative works of the Seller Listing Content. This Paragraph 6B(2) survives termination of this Listing.

(3) All Broker Listing Content is owned exclusively by Broker, and Seller has no right, title or interest in or to any Broker Listing Content.

(4) Seller understands and agrees that both the Seller Listing Content and Broker Listing Content, including any changes to such content, may be filed with the MLS, included in compilations of listings, and otherwise distributed, publicly displayed and reproduced.

**7. ACCESS TO THE PROPERTY:**

A. <u>Authorizing Access</u>: Authorizing access to the Property means giving permission to another person to enter the Property, disclosing to the other person any security codes necessary to enter the Property, and lending a key to the other person to enter the Property, directly or through a keybox. To facilitate the showing and sale of the Property, Seller instructs Broker to:
   (1) access the Property at reasonable times;

(TXR-1101) 07-08-22     Initialed for Identification by Broker/Associate [JC] and Seller [PG] , [RE]     Page 4 of 11

222 River Birch Trail
Garland, TX  75040

Residential Listing concerning

    (2) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times; and

    (3) duplicate keys to facilitate convenient and efficient showings of the Property.

B. <u>Scheduling Companies</u>: Broker may engage the following companies to schedule appointments and to authorize others to access the Property: **N/A** .

C. **<u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device so that authorized persons may enter the Property, even in Seller's absence. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

    (1) Broker ☒ is ☐ is not  authorized to place a keybox on the Property.

    (2) If a tenant occupies the Property at any time during this Listing, Seller will furnish Broker a written statement (for example, TXR No. 1411), signed by all tenants, authorizing the use of a keybox or Broker may remove the keybox from the Property.

D. <u>Liability and Indemnification</u>: When authorizing access to the Property, Broker, other brokers, their associates, any keybox provider, or any scheduling company are not responsible for personal injury or property loss to Seller or any other person. Seller assumes all risk of any loss, damage, or injury. **Except for a loss caused by Broker, Seller will indemnify and hold Broker harmless from any claim for personal injury, property damage, or other loss.**

8. **COOPERATION WITH OTHER BROKERS:** Broker will allow other brokers to show the Property to prospective buyers. Broker will offer to pay the other broker a fee as described below if the other broker procures a buyer that purchases the Property.

A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
    (1) if the other broker represents the buyer:   **Up to 3**   % of the sales price or $ _____ ; and
    (2) if the other broker is a subagent:      _____ % of the sales price or $ _____ .

B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
    (1) if the other broker represents the buyer: **Up up to 3** % of the sales price or $ _____ ; and
    (2) if the other broker is a subagent:      _____ % of the sales price or $ _____ .

9. **INTERMEDIARY:** *(Check A or B only.)*

☒ A. <u>Intermediary Status</u>: Broker may show the Property to interested prospective buyers who Broker represents. If a prospective buyer who Broker represents offers to buy the Property, Seller authorizes Broker to act as an intermediary and Broker will notify Seller that Broker will service the parties in accordance with one of the following alternatives.

    (1) If a prospective buyer who Broker represents is serviced by an associate other than the associate servicing Seller under this Listing, Broker may notify Seller that Broker will: (a) appoint the associate then servicing Seller to communicate with, carry out instructions of, and provide opinions and advice during negotiations to Seller; and (b) appoint the associate then servicing the prospective buyer to the prospective buyer for the same purpose.

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate _JC_  and Seller _PG_ , _RE_    Page 5 of 11



**222 River Birch Trail**
Residential Listing concerning _____**Garland, TX  75040**_____

(2) If a prospective buyer who Broker represents is serviced by the same associate who is servicing Seller, Broker may notify Seller that Broker will: (a) appoint another associate to communicate with, carry out instructions of, and provide opinions and advice during negotiations to the prospective buyer; and (b) appoint the associate servicing the Seller under this Listing to the Seller for the same purpose.

(3) Broker may notify Seller that Broker will make no appointments as described under this Paragraph 9A and, in such an event, the associate servicing the parties will act solely as Broker's intermediary representative, who may facilitate the transaction but will not render opinions or advice during negotiations to either party.

☐ **B. No Intermediary Status:** Seller agrees that Broker will not show the Property to prospective buyers who Broker represents.

**Notice:** **If Broker acts as an intermediary under Paragraph 9A, Broker and Broker's associates:**
- **may not disclose to the prospective buyer that Seller will accept a price less than the asking price unless otherwise instructed in a separate writing by Seller;**
- **may not disclose to Seller that the prospective buyer will pay a price greater than the price submitted in a written offer to Seller unless otherwise instructed in a separate writing by the prospective buyer;**
- **may not disclose any confidential information or any information Seller or the prospective buyer specifically instructs Broker in writing not to disclose unless otherwise instructed in a separate writing by the respective party or required to disclose the information by the Real Estate License Act or a court order or if the information materially relates to the condition of the property;**
- **may not treat a party to the transaction dishonestly; and**
- **may not violate the Real Estate License Act.**

**10. CONFIDENTIAL INFORMATION:** During this Listing or after it ends, Broker may not knowingly disclose information obtained in confidence from Seller except as authorized by Seller or required by law. Broker may not disclose to Seller any confidential information regarding any other person Broker represents or previously represented except as required by law.

**11. BROKER'S AUTHORITY:**

A. Broker will use reasonable efforts and act diligently to market the Property for sale, procure a buyer, and negotiate the sale of the Property.

B. If box 6A(1) is checked, Broker is authorized to display this Listing on the Internet without limitation unless one of the following is checked:

☐ (1) Seller does not want this Listing to be displayed on the Internet.
☐ (2) Seller does not want the address of the Property to be displayed on the Internet.

<u>Notice:</u> Seller understands and acknowledges that, if box 11B(1) is checked, consumers who conduct searches for listings on the Internet will not see information about this Listing in response to their search.

C. Broker is authorized to market the Property with the following financing options:

| | | | |
|---|---|---|---|
| ☒ | (1) Conventional | ☐ | (5) Texas Veterans Land Program |
| ☒ | (2) VA | ☐ | (6) Owner Financing |
| ☒ | (3) FHA | ☐ | (7) Other |
| ☒ | (4) Cash | | |



Ultima Real Estate, 5339 Alpha Road Ste. 120 Dallas TX 75240    Phone: 214.682.7261    Fax: 214-242-5413    Patricia Gardner
Jojuana Cleveland    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Residential Listing concerning

**222 River Birch Trail**
**Garland, TX  75040**

D.  In accordance with applicable MLS rules as outlined in Paragraph 6, Broker may:

    (1) advertise the Property by means and methods as Broker determines, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;

    (2) place a "For Sale" sign on the Property and remove all other signs offering the Property for sale or lease;

    (3) furnish comparative marketing and sales information about other properties to prospective buyers;

    (4) disseminate information about the Property to other brokers and to prospective buyers, including applicable disclosures or notices that Seller is required to make under law or a contract;

    (5) obtain information from any holder of a note secured by a lien on the Property;

    (6) accept and deposit earnest money in trust in accordance with a contract for the sale of the Property;

    (7) disclose the sales price and terms of sale to other brokers, appraisers, or other real estate professionals;

    (8) in response to inquiries from prospective buyers and other brokers, disclose whether the Seller is considering more than one offer (Broker will not disclose the terms of any competing offer unless specifically instructed by Seller);

    (9) advertise, during or after this Listing ends, that Broker "sold" the Property; and

    (10) place information about this Listing, the Property, and a transaction for the Property on an electronic transaction platform (typically an Internet-based system where professionals related to the transaction such as title companies, lenders, and others may receive, view, and input information).

E.  Broker is not authorized to execute any document in the name of or on behalf of Seller concerning the Property.

**12. SELLER'S REPRESENTATIONS:** Except as provided by Paragraph 15, Seller represents that:

A.  Seller has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to convey the Property;

B.  Seller is not bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during this Listing;

C.  any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances;

D.  no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;

E.  Seller is current and not delinquent on all loans and all other financial obligations related to the Property, including but not limited to mortgages, home equity loans, home improvement loans, homeowner association fees, and taxes, except **Mortgage**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　;

F.  Seller is not aware of any liens or other encumbrances against the Property, except **None**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　；

G.  the Property is not subject to the jurisdiction of any court;

H.  all information relating to the Property Seller provides to Broker is true and correct to the best of Seller's knowledge;

I.  the name of any employer, relocation company, or other entity that provides benefits to Seller when selling the Property is: **N/A**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　

J.  the Seller Listing Content, and the license granted to Broker for the Seller Listing Content, do not violate or infringe upon the rights, including any copyright rights, of any person or entity; and

K.  Seller is aware of the Property being located in the following public improvement district (PID), municipal utility district (MUD), or other statutorily created districts providing water, sewer, drainage, or flood control facilities and services (list all that Seller is aware of):　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　

(TXR-1101) 07-08-22　　　Initialed for Identification by Broker/Associate [ *JC* ] and Seller [ *PG* ] [ *RE* ]　　　Page 7 of 11



Residential Listing concerning _____
**222 River Birch Trail**
**Garland, TX 75040**

### 13. SELLER'S ADDITIONAL PROMISES: Seller agrees to:

A. cooperate with Broker to facilitate the showing, marketing, and sale of the Property;

B. not rent or lease the Property during this Listing without Broker's prior written approval;

C. not negotiate with any prospective buyer who may contact Seller directly, but refer all prospective buyers to Broker;

D. not enter into a listing agreement with another broker for the sale, exchange, lease, or management of the Property to become effective during this Listing without Broker's prior written approval;

E. if box 6A(2) is checked, promptly inform Broker in the event Seller becomes aware that the Property has been publicly marketed;

F. maintain any pool and all required enclosures in compliance with all applicable laws and ordinances;

G. provide Broker with copies of any leases or rental agreements pertaining to the Property and advise Broker of tenants moving in or out of the Property;

H. complete any disclosures or notices required by law or a contract to sell the Property; and

I. amend any applicable notices and disclosures if any material change occurs during this Listing.

### 14. LIMITATION OF LIABILITY:

A. If the Property is or becomes vacant during this Listing, Seller must notify Seller's casualty insurance company and request a "vacancy clause" to cover the Property. Broker is not responsible for the security of the Property nor for inspecting the Property on any periodic basis.

B. **Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:**

    **(1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;**

    **(2) other brokers or their associates who may have information about the Property on their websites;**

    **(3) acts of third parties (for example, vandalism or theft);**

    **(4) freezing water pipes;**

    **(5) a dangerous condition on the Property;**

    **(6) the Property's non-compliance with any law or ordinance; or**

    **(7) Seller, negligently or otherwise.**

C. **Seller agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:**

    **(1) are caused by Seller, negligently or otherwise;**

    **(2) arise from Seller's failure to disclose any material or relevant information about the Property; or**

    **(3) are caused by Seller giving incorrect information to any person.**

### 15. SPECIAL PROVISIONS:
**Seller to put away all small valuables (such as rings ) and medications during showings.**
**Seller will be provided a minimum of two hours notice for all showings.**

### 16. DEFAULT: If Seller does not cooperate with Broker to facilitate the showing, marketing, or sale of the Property or otherwise breaches this Listing, Seller is in default and will be liable to Broker for the amount of the Broker's compensation specified in Paragraph 5A and any other compensation Broker is entitled to

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate _JC_ and Seller _PG_ _RE_    Page 8 of 11

Ultima Real Estate, 5339 Alpha Road Ste. 120 Dallas TX 75240                                    Phone: 214.682.7261    Fax: 214-242-5413    Patricia Gardner
Jojuana Cleveland                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Authentisign ID: 0CF76889-A5A1-ED11-BF7A-000F2765A51

**222 River Birch Trail**
Residential Listing concerning _____**Garland, TX  75040**_____

receive under this Listing; Broker may also terminate this Listing and exercise any other remedy at law. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for purposes of computing compensation. If Broker breaches this Listing, Broker is in default and Seller may exercise any remedy at law.

**17. MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this Listing that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

**18. ATTORNEY'S FEES:** If Seller or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing or any transaction related to or contemplated by this Listing, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**19. ADDENDA AND OTHER DOCUMENTS:** Addenda that are part of this Listing and other documents that Seller may need to provide are:

[X] A.  Information About Brokerage Services;
[X] B.  Seller Disclosure Notice (§5.008, Texas Property Code);
[ ] C.  Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (required if Property was built before 1978);
[ ] D.  Residential Real Property Affidavit (T-47 Affidavit; related to existing survey);
[ ] E.  MUD, Water District, or Statutory Tax District Disclosure Notice (Chapter 49, Texas Water Code);
[ ] F.  PID Disclosure Notice;
[ ] G.  Request for Information from an Owners' Association;
[ ] H.  Request for Mortgage Information;
[ ] I.  Information about Mineral Clauses in Contract Forms;
[ ] J.  Information about On-Site Sewer Facility;
[ ] K.  Information about Property Insurance for a Buyer or Seller;
[ ] L.  Information about Special Flood Hazard Areas;
[ ] M.  Condominium Addendum to Listing;
[ ] N.  Keybox Authorization by Tenant;
[ ] O.  Seller's Authorization to Release and Advertise Certain Information; and
[ ] P.  _____

**20. AGREEMENT OF PARTIES:**

A.  <u>Entire Agreement</u>: This Listing is the entire agreement of the parties and may not be changed except by written agreement.

B.  <u>Assignability</u>: Neither party may assign this Listing without the written consent of the other party.

C.  <u>Binding Effect</u>: Seller's obligation to pay Broker earned compensation is binding upon Seller and Seller's heirs, administrators, executors, successors, and permitted assignees.

D.  <u>Joint and Several</u>: All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

E.  <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this Listing.

F.  <u>Severability</u>: If a court finds any clause in this Listing invalid or unenforceable, the remainder of this Listing will not be affected and all other provisions of this Listing will remain valid and enforceable.

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate _JC_ and Seller _PG_ , _RE_    Page 9 of 11

**222 River Birch Trail**
**Garland, TX  75040**

Residential Listing concerning _____

G. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

**21. ADDITIONAL NOTICES:**

A. **Broker's compensation or the sharing of compensation between brokers is not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B. **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C. Broker advises Seller to contact any mortgage lender or other lien holder to obtain information regarding payoff amounts for any existing mortgages or liens on the Property.

D. Broker advises Seller to review the information Broker submits to an MLS or other listing service.

E. Broker advises Seller to remove or secure jewelry, prescription drugs, other valuables, firearms and any other weapons.

F. Broker advises Seller to consult an attorney before using any type of surveillance device in the Property to record or otherwise monitor prospective buyers without their knowledge or consent. Seller should be aware that a prospective buyer might photograph or otherwise record the Property without Seller's knowledge or consent.

G. Statutes or ordinances may regulate certain items on the Property (for example, swimming pools and septic systems). Non-compliance with the statutes or ordinances may delay a transaction and may result in fines, penalties, and liability to Seller.

H. If the Property was built before 1978, Federal law requires the Seller to: (1) provide the buyer with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or lead-based paint hazards in the Property; (3) deliver all records and reports to the buyer related to such paint or hazards; and (4) provide the buyer a period up to 10 days to have the Property inspected for such paint or hazards.

I. If Seller is a "foreign person" as defined by federal law, a buyer may be required to withhold certain amounts from the sales proceeds and deliver the same to the Internal Revenue Service to comply with applicable tax law. A "foreign person" is a: (1) nonresident alien individual; (2) foreign corporation that has not made an election under section 897(i) of the Internal Revenue Code to be treated as a domestic corporation; or (3) foreign partnership, trust, or estate. The definition does not include a resident alien individual. Seller notifies Broker that Seller ☐ is ☒ is not a "foreign person" as defined by federal law. If Seller is unsure whether Seller qualifies as a "foreign person" under federal law, Broker advises Seller to consult a tax professional or an attorney.

J. Broker advises Seller to refrain from transmitting personal information, such as bank account numbers or other financial information, via unsecured email or other electronic communication to reduce risk of wire fraud.

K. Broker cannot give legal advice. **READ THIS LISTING CAREFULLY. If you do not understand the effect of this Listing, consult an attorney BEFORE signing.**

(TXR-1101) 07-08-22   Initialed for Identification by Broker/Associate  and Seller _____ , _____   Page 10 of 11

Authentisign ID: 0CF76889-A5A1-ED11-B7FA-0050F2765AB1

Residential Listing concerning _____
**222 River Birch Trail**
**Garland, TX   75040**
_____

**Ultima Real Estate**
Broker's Printed Name                    **9008084**  License No.

*Jojuana Cleveland*                 01/31/2023   **01/31/2023**
☐  Broker's Signature                                    Date
☒  Broker's Associate's Signature, as an authorized agent of Broker

**Jojuana Cleveland**
Broker's Associate's Printed Name, if applicable

**Patricia Gardner**
Seller's Printed Name

*Patricia Gardner*            01/31/2023   **01/31/2023**
Seller's Signature                           Date

**Reginald Elam**
Seller's Printed Name

*Reginald Elam*            01/31/2023   **01/31/2023**
Seller's Signature                           Date

Ultima Real Estate, 5339 Alpha Road Ste. 120 Dallas TX 75240                                    Phone: 214.682.7261        Fax: .214-242-5413        Patricia Gardner
Jojuana Cleveland                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

# U.S. Bankruptcy Court
## Northern District of Texas (Dallas)
### Bankruptcy Petition #: 23-30201-swe13

|  |  |
|---|---|
| | *Date filed:* 02/04/2023 |
| | *Date terminated:* 10/31/2023 |
| | *Debtor dismissed:* 09/06/2023 |
| | *341 meeting:* 03/16/2023 |
| | *Deadline for filing claims:* 04/17/2023 |
| | *Deadline for filing claims (govt.):* 08/03/2023 |

*Assigned to:* Bankruptcy Judge Scott W Everett
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

**Debtor**
**Patricia Renee Gardner**
222 River Birch Trail
Garland, TX 75040
DALLAS-TX
SSN / ITIN: xxx-xx-6056

represented by **Lawrence Herrera**
Law Office of Lawrence Herrera
4717 W. Lovers Lane
Dallas, TX 75209
(214)526-0334
Fax : 214-526-3098
Email: lherrera@flash.net

**Trustee**
**Thomas Powers**
105 Decker Court, Ste 1150
Irving, TX 75062
214-855-9200

**U.S. Trustee**
**United States Trustee**
1100 Commerce Street
Room 976
Dallas, TX 75202
214-767-8967

| Filing Date | Docket Text |
|---|---|
| 02/04/2023 | **1** (71 pgs) Individual Chapter 13 Voluntary Petition . Fee Amount $313. Filed by Patricia Renee Gardner (Herrera, Lawrence) |
| 02/04/2023 | **2** (3 pgs) First Meeting of Creditors with 341(a) meeting to be held on 3/16/2023 at 08:30 AM by VIDEO CONFERENCE. (autoassign) Government Proof of Claim due by 8/3/2023. Proofs of Claims due by 4/17/2023. (Herrera, Lawrence) |
| 02/04/2023 | **3** (11 pgs) Chapter 13 plan and motion for valuation dated: 2/4/2023 for 60 months without objection to claims filed by Debtor Patricia Renee Gardner. (Herrera, Lawrence) |
| 02/04/2023 | **4** (2 pgs) Authorization for adequate protection disbursement filed by Debtor Patricia Renee Gardner. (Herrera, Lawrence) |

| | |
|---|---|
| 02/04/2023 | 6 (1 pg) Certificate of credit counseling dated 2/3/2023 . Filed by Debtor Patricia Renee Gardner. (Herrera, Lawrence) |
| 02/04/2023 | Employee income statement regarding pay advices 11 USC sec. 521. Employer did not provide pay stubs 60 days prior to petition date. Name of employer: Advent Healthcare. Gross amount of income which can be supported by bank records is $2800. Filed by Debtor Patricia Renee Gardner. (Herrera, Lawrence) |
| 02/04/2023 | Receipt of filing fee for Voluntary petition (chapter 13)( 23-30201-13) [misc,volp13a] ( 313.00). Receipt number A30150232, amount $ 313.00 (re: Doc# 1). (U.S. Treasury) |
| 02/08/2023 | 7 (5 pgs) BNC certificate of mailing - meeting of creditors. (RE: related document(s)2 First Meeting of Creditors with 341(a) meeting to be held on 3/16/2023 at 08:30 AM by VIDEO CONFERENCE. (autoassign) Government Proof of Claim due by 8/3/2023. Proofs of Claims due by 4/17/2023.) No. of Notices: 2. Notice Date 02/08/2023. (Admin.) |
| 02/09/2023 | 8 (2 pgs) Notice of Appearance and Request for Notice by Linda D. Reece filed by Garland ISD, City of Garland. (Reece, Linda) |
| 02/09/2023 | 9 (1 pg) Notice of Appearance and Request for Notice by Camille Stecker filed by Creditor Dallas County. (Stecker, Camille) |
| 02/27/2023 | 10 (2 pgs) Notice of appearance and request for notice filed by Creditor AmeriCredit Financial Services, Inc. dba GM Financial. (Youngblood, Mandy) |
| 03/09/2023 | 11 (2 pgs) Trustee's Notice of hearing on debtor's final chapter 13 plan *with Certificate of Service* Pre-Hearing conference set for *4/20/23 at 8:30 A.M.* at *105 Decker Ct, Suite 120, Irving, Texas* (Powers, Thomas) |
| 03/17/2023 | 12 (3 pgs) Continuance of meeting of creditors to *04/06/2023 at 9:00 a.m. Meeting to be held at 105 Decker Ct, Suite 120, Irving, Texas* (Powers, Thomas) |
| 03/20/2023 | 13 (2 pgs) Trustee's Notice of intent to dismiss case *for failure to Cooperate as necessary to enable the Trustee to perform his duties under the Bankruptcy Code as required by Section 521(a)(3).* (Powers, Thomas) |
| 03/20/2023 | 14 (2 pgs) Trustee's Notice of intent to dismiss case *for failure to Cooperate as necessary to enable the Trustee to perform his duties under the Bankruptcy Code as required by Section 521(a)(3).* (Powers, Thomas) |
| 04/06/2023 | 15 (2 pgs) Notice of Appearance and Request for Notice by Branch M. Sheppard filed by Creditor SPECIALIZED LOAN SERVICING, LLC as servicer for DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION, as Trustee for HIS Asset Corporation Trust 2006-HEI, Mortgage Pass-Through Certificate, Series 2006-H. (Sheppard, Branch) |
| 04/07/2023 | 16 (3 pgs) Objection to confirmation of Chapter 13 plan (Powers, Thomas) |
| 04/10/2023 | 17 (3 pgs) Meeting of creditors chapter 13 (held) *and concluded* (Powers, Thomas) |
| 04/10/2023 | 18 (2 pgs) Trustee Objection to confirmation of Chapter 13 plan *for feasibility due to plan delinquency. This objection to confirmation is supplemental to any other that may have been filed by the Chapter 13 Trustee in this case* (Powers, Thomas) |
| 04/12/2023 | 19 (3 pgs) Objection to confirmation of plan (RE: related document(s)3 Chapter 13 Plan) filed by Creditor Specialized Loan Servicing LLC. (Pryor, Chandra) |

| 04/21/2023 | <u>20</u> (2 pgs) Notice *of Trustees Mortgage Payment Change and No Change to Debtor(s) Plan Base and Payment to the Trustee* filed by Trustee Thomas Powers. (Powers, Thomas) |
|---|---|
| 04/28/2023 | <u>21</u> (2 pgs) Order denying confirmation of chapter 13 plan (RE: related document(s)<u>3</u> Chapter 13 Plan filed by Debtor Patricia Renee Gardner). Entered on 4/28/2023 (Blanco, J.) |
| 04/30/2023 | <u>22</u> (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)<u>21</u> Order denying confirmation of chapter 13 plan (RE: related document(s)<u>3</u> Chapter 13 Plan filed by Debtor Patricia Renee Gardner). Entered on 4/28/2023 (Blanco, J.)) No. of Notices: 1. Notice Date 04/30/2023. (Admin.) |
| 05/01/2023 | <u>23</u> (1 pg) Notice of deficiency financial management course certificate before discharge. (Admin) |
| 05/04/2023 | <u>24</u> (3 pgs) BNC certificate of mailing. (RE: related document(s)<u>23</u> Notice of deficiency financial management course certificate before discharge. (Admin)) No. of Notices: 1. Notice Date 05/04/2023. (Admin.) |
| 05/25/2023 | <u>25</u> (2 pgs) Trustee's motion to dismiss chapter 13 case *for failure to Obtain Confirmation and/or Reduce Attorney Fees.* Pre-hearing conference to be held on *6/29/23 at 8:30 A.M. at Due to the Covid pandemic Debtors Counsel must initiate the pre-hearing conference by contacting the Trustee or his staff attorney no later than 4:00 p.m. 06/28/2023* (Powers, Thomas) |
| 06/12/2023 | <u>26</u> (2 pgs) Trustee's Notice of intent to dismiss case *for Dismissal per General Order 2021-05. The Debtor must bring all payments current on or before 06/29/2023 in the amount of $6000.00 or appear at the the DAL Ch13 Ofc between 8:00 a.m. - 12:00 p.m. on TEST for arrangements.* (Powers, Thomas) |
| 06/26/2023 | <u>27</u> (11 pgs) Amended chapter 13 plan without objection to claims filed by Debtor Patricia Renee Gardner (RE: related document(s)<u>3</u> Chapter 13 Plan). (Herrera, Lawrence) |
| 06/27/2023 | <u>28</u> (2 pgs) Trustee's Notice of hearing on debtor's final chapter 13 plan *with Certificate of Service* Pre-Hearing conference set for *8/31/2023 at 8:30 A.M. at 105 Decker Ct, Suite 120, Irving, Texas* (Powers, Thomas) |
| 07/05/2023 | <u>29</u> (1 pg) Trustee's Notice of continuance *of Trustee's Motion to Dismiss Case for Failure to Obtain Confirmation and/or Reduce Attorney Fees set on FTC Dismissal Docket. Continued hearing to be held on 07/20/2023. Due to the Covid pandemic Debtors Counsel must initiate the pre-hearing conference by contacting the Trustee or his staff attorney no later than 4:00 p.m. 07/19/2023* (RE: related document(s)<u>25</u> Motion to dismiss case by chapter 13 trustee (with prehrg cnf)) (Powers, Thomas) |
| 07/05/2023 | <u>30</u> (1 pg) Trustee's Notice of withdrawal of *of Trustee's 17 Day Notice of Intent to Certify Chapter 13 Case for Dismissal set on NOI $$ Docket on 06/29/2023* filed by (RE: related document(s)<u>26</u> Notice of intent to dismiss case) (Powers, Thomas) |
| 07/25/2023 | <u>31</u> (1 pg) Trustee's Notice of continuance *of Trustee's Motion to Dismiss Case for Failure to Obtain Confirmation and/or Reduce Attorney Fees set on FTC Dismissal Docket. Continued hearing to be held on 08/31/2023. Due to the Covid pandemic Debtors Counsel must initiate the pre-hearing conference by contacting the Trustee or his staff attorney no later than 4:00 p.m. 08/30/2023* (RE: related document(s)<u>25</u> Motion to dismiss case by chapter 13 trustee (with prehrg cnf)) (Powers, Thomas) |
| 07/28/2023 | <u>32</u> (3 pgs; 2 docs) Assignment/Transfer of claim. Fee Amount $26. Transfer Agreement 3001 (e) 2 Transferor: REGIONAL MANAGEMENT CORPORATION (Claim No. 2) To JEFFERSON CAPITAL SYSTEMS LLC. To JEFFERSON CAPITAL SYSTEMS LLCPO Box 7999St Cloud MN 56302 Filed by Creditor Jefferson Capital Systems LLC. (Mehrenberg, Nancy) |
| 07/28/2023 | Receipt of filing fee for Assignment/Transfer of claim( 23-30201-swe13) [claims,trasclm] ( 26.00). Receipt number A30605934, amount $ 26.00 (re: Doc# <u>32</u>). (U.S. Treasury) |

| | |
|---|---|
| 08/02/2023 | <u>33</u> (3 pgs) BNC certificate of mailing. (RE: related document(s)<u>32</u> Assignment/Transfer of claim. Fee Amount $26. Transfer Agreement 3001 (e) 2 Transferor: REGIONAL MANAGEMENT CORPORATION (Claim No. 2) To JEFFERSON CAPITAL SYSTEMS LLC. To JEFFERSON CAPITAL SYSTEMS LLCPO Box 7999St Cloud MN 56302 Filed by Creditor Jefferson Capital Systems LLC.) No. of Notices: 0. Notice Date 08/02/2023. (Admin.) |
| 08/11/2023 | <u>34</u> (3 pgs) Objection to confirmation of Chapter 13 plan (Powers, Thomas) |
| 08/14/2023 | <u>35</u> (2 pgs) Trustee's Notice of intent to dismiss case _for Dismissal per General Order 2021-05. The Debtor must bring all payments current on or before 08/31/2023 in the amount of $6000.00 or appear at the the DAL Ch13 Ofc between 8:00 a.m. - 12:00 p.m. on TEST for arrangements._ (Powers, Thomas) |
| 08/22/2023 | <u>36</u> (2 pgs) Trustee Objection to confirmation of Chapter 13 plan _for feasibility due to plan delinquency. This objection to confirmation is supplemental to any other that may have been filed by the Chapter 13 Trustee in this case_ (Powers, Thomas) |
| 09/06/2023 | <u>37</u> (2 pgs) Order granting Trustee's motion to dismiss Debtor without prejudice(related document # <u>25</u>) Entered on 9/6/2023. (Blanco, J.) |
| 09/08/2023 | <u>38</u> (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)<u>37</u> Order granting Trustee's motion to dismiss Debtor without prejudice(related document <u>25</u>) Entered on 9/6/2023. (Blanco, J.)) No. of Notices: 3. Notice Date 09/08/2023. (Admin.) |
| 09/12/2023 | <u>39</u> (2 pgs) Order denying confirmation of chapter 13 plan (RE: related document(s)<u>27</u> Chapter 13 Plan filed by Debtor Patricia Renee Gardner). Entered on 9/12/2023 (Okafor, Marcey) |
| 09/25/2023 | <u>40</u> (3 pgs) Chapter 13 trustee final report and account (Powers, Thomas) |
| 09/25/2023 | <u>41</u> (1 pg) Final report summary (Powers, Thomas) |
| 09/28/2023 | <u>42</u> (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)<u>41</u> Final report summary) No. of Notices: 3. Notice Date 09/28/2023. (Admin.) |
| 10/31/2023 | <u>43</u> (1 pg) Order approving chapter 13 trustee report and discharging trustee (Case closed) . Entered on 10/31/2023 (Blanco, J.) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/25/2024 12:44:38 | | |
| **PACER Login:** | Jhel3217 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 23-30201-swe13 Fil or Ent: filed From: 2/1/2023 To: 9/25/2024 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |

| Billable Pages: | 3 | Cost: | 0.30 |
|---|---|---|---|

NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE
SERVICING (ALW)
ELAM, REGINALD AND PATRICIA RENEE GARDNER
222 RIVER BIRCH TRAIL, GARLAND, TX 75040

CONVENTIONAL

Firm File Number: 17-027568

2024 JUL 31 PM 12: 25

JOHN F. WARREN

## NOTICE OF TRUSTEE'S SALE

WHEREAS, on June 10, 2005, REGINALD ELAM, UNMARRIED MAN AND PATRICIA RENEE GARDNER, AN UNMARRIED WOMAN, as Grantor(s), executed a Deed of Trust conveying to ELDON L. YOUNGBLOOD, as Trustee, the Real Estate hereinafter described, to NEW CENTURY MORTGAGE CORPORATION in payment of a debt therein described. The Deed of Trust was filed in the real property records of DALLAS COUNTY, TX and is recorded under Clerk's File/Instrument Number 3398364 Volume 2005120, Page 1451, to which reference is herein made for all purposes.

WHEREAS, default has occurred in the payment of said indebtedness, and the same is now wholly due, and the owner and holder has requested to sell said property to satisfy said indebtedness;

WHEREAS, the undersigned has been appointed Substitute Trustee in the place of said original Trustee, upon contingency and in the manner authorized by said Deed of Trust; and

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on , Tuesday, October 1, 2024 between ten o'clock AM and four o'clock PM and beginning not earlier than 10:00 AM or not later than three hours thereafter, the Substitute Trustee will sell said Real Estate at the County Courthouse in DALLAS COUNTY, TX to the highest bidder for cash. The sale will be conducted in the area of the Courthouse designated by the Commissioners Court, of said county, pursuant to Section §51.002 of the Texas Property Code as amended; if no area is designated by the Commissioners' Court, the sale will be conducted in the area immediately adjacent (next) to the location where this Notice of Trustee's Sale was posted.

Said Real Estate is described as follows: In the County of Dallas, State of Texas:

LOT 3, BLOCK 1 OF HIDDEN FOREST ESTATES, AN ADDITION TO THE CITY OF GARLAND, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 2004072, PAGE 16, MAP RECORDS, DALLAS COUNTY, TEXAS.

Property Address: 222 RIVER BIRCH TRAIL
GARLAND, TX 75040
Mortgage Servicer: NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING
Mortgagee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET
CORPORATION TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-HE1
601 OFFICE CENTER DRIVE
SUITE 100
FORT WASHINGTON, PA 19034

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER**

SUBSTITUTE TRUSTEE
John Beazley, Bob Dickerson, Aaron Parker, Logan Thomas, Phillip Pierceall, Terry Waters, Douglas Rodgers, Clay Golden, Craig Muirhead, Doak Lambert, Wendy Lambert, Cary Corenblum, Matthew Hansen, Joshua Sanders, Shawn Schiller, Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Carol Dunmon, Jane Kline, Payton Hreha or Chasity Lewallen
1 Mauchly
Irvine, CA 92618

WITNESS MY HAND this day July 29, 2024.

By:
Ronny George
Texas Bar # 24123104
rgeorge@logs.com


EXHIBIT F

13105 Northwest Freeway, Suite 960
Houston, TX 77040
Telephone No: (713) 462-2565
Facsimile No: (847) 879-4823
Attorneys for Deutsche Bank National Trust Company, as
Trustee for HSI Asset Corporation Trust 2006-HE1,
Mortgage Pass-Through Certificates, Series 2006-HE1

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active military service to the sender of this notice immediately.**

# EXHIBIT A-2

FILED
9/27/2024 2:06 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Margaret Thomas DEPUTY

CAUSE NO. **DC-24-17440**

| | | |
|---|---|---|
| REGINALD ELAM, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DEUTSCHE BANK TRUST COMPANY, | § | |
| NATIONAL ASSOCIATION, as Trustee | § | **14TH** JUDICIAL DISTRICT |
| for HSI Asset Corporation Trust 2006- | § | |
| HEI, Mortgage Pass-Through Certificate, | § | |
| Series 2006-HE1., and NEWREZ LLC, | § | |
| d/b/a SHELLPOINT MORTGAGE | § | |
| SERVICING, its/their successors and/or | § | |
| assigns, | § | |
| | § | OF DALLAS COUNTY, TEXAS |
| Defendants. | | |

## CERTIFICATE OF CONFERENCE

Pursuant to the Dallas County Local Rules, the undersigned counsel for the Plaintiff named in the above styled and numbered cause, hereby certifies that on September 27, 2024 at 7:47 a.m., my legal assistant, Hannah Kube, sent an email to attorney Ronny George, of LOGS Legal Group, LLP at rgeorge@logs.com, who is the local attorney who represents the Defendants, its/their successors and/or assigns, in the processing of a foreclosure sale, to notify counsel of the filing of the Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Petition"), and provided copies of the filed Petition and proposed temporary restraining order ("TRO") as well as a copy of the envelope receipt, and advised foreclosure counsel that I would be seeking entry of the TRO at last two hours later.

Respectfully submitted,

**J. GANNON HELSTOWSKI LAW FIRM**

*/s/ John G. Helstowski*
John G. Helstowski

Texas Bar No. 24078653
5209 Heritage Avenue, Suite 510
Colleyville, Texas 76034
Telephone: (817) 382-3125
Facsimile: (817) 382-1799
Email: jgh@jghfirm.com
Attorney for Plaintiffs

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

John Helstowski
Bar No. 24078653
jgh@jghfirm.com
Envelope ID: 92544477
Filing Code Description: Certificate Of Conference
Filing Description:
Status as of 9/27/2024 2:15 PM CST

Associated Case Party: REGINALD ELAM

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Helstowski | | jgh@jghfirm.com | 9/27/2024 2:06:58 PM | SENT |

# EXHIBIT A-3

CAUSE NO. <u>DC-24-17440</u>



| | | |
|---|---|---|
| REGINALD ELAM, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DEUTSCHE BANK TRUST COMPANY, | § | |
| NATIONAL ASSOCIATION, as Trustee | § | **14TH** JUDICIAL DISTRICT |
| for HSI Asset Corporation Trust 2006- | § | |
| HEI, Mortgage Pass-Through Certificate, | § | |
| Series 2006-HE1., and NEWREZ LLC, | § | |
| d/b/a SHELLPOINT MORTGAGE | § | |
| SERVICING, its/their successors and/or | § | |
| assigns, | § | |
| | § | DALLAS COUNTY, TEXAS |
| Defendants. | | |

## <u>TEMPORARY RESTRAINING ORDER</u>

On this date the Application for a Temporary Restraining Order of Plaintiff, Reginald Elam that was incorporated into the Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Petition") filed in this cause, was heard and considered before this court.

Based upon the pleadings, exhibits, records, and documents filed and presented to the Court, as well as the arguments of counsel at the hearing, IT CLEARLY APPEARS: .

A. That unless Defendants, Deutsch Bank Trust Company, National Association and Newrez LLC dba Shellpoint Mortgage Servicing, and each of its respective agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns, is immediately restrained and enjoined, the Defendant will proceed with foreclosure and foreclose on Plaintiff's property described in their Petition, and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and the

Defendants will commit the foregoing before notice and a hearing on Plaintiff's Application for Temporary Injunction.

B.   Plaintiff will suffer an irreparable harm if the Defendant, and/or any of its/their agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns are not restrained immediately, because Plaintiff will lose fee simple title, ownership and possession of their property, which is unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final and equitable relief.

C.   Plaintiff has provided notice to the Defendants, through their local foreclosure attorney and/or trustee, LOGS Legal Group, LLP, of the filing of Plaintiff's Petition at least two (2) hours before this Court conducted this hearing and has provided the Court with a Certificate of Conference to evidence the same as required by the Local Rules of the Dallas County District Courts.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendants, Deutsche Bank and Shellpoint, and any of its agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns is/are each hereby ORDERED to immediately cease and desist from proceeding with any and all efforts to foreclose upon Plaintiff's homestead property described in the Plaintiff's Petition, which is commonly known as 222 River Birth Trail, Garland, Texas 75040, and that the Defendants, and any of its agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns is/are each hereby immediately enjoined and restrained from the date of entry of this order until fourteen (14) days hereafter, or until further order of this Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on _Oct. 14_, 2024 at _l0a_. **M.** in the courtroom

of the Presiding Court Judicial District Court of Dallas County located in the George L. Allen, Sr.

Courts Building, 600 Commerce Street, Room _____, Dallas, Texas 75202, and that the

Defendants are commanded to appear at that time and provide reasons, if any, why a temporary

injunction should not be issued against said Defendants.

   The clerk of the above-entitled court shall issue a notice of entry of a temporary

restraining order in conformity with the law and the terms of this order, to include a copy of this

order, upon the posting by Plaintiff of the bond hereinafter set forth.

   This order shall not be effective until Plaintiff deposits with the Dallas County District

Clerk a cash bond in the amount of $ _2600_ , or in the form of a check drawn from the

Plaintiff's counsel's business checking account, in due conformity with applicable law.

   **SIGNED and ENTERED** on this __30__ day of September, 2024, at _1_ o'clock, _P._

M.



**DISTRICT JUDGE**

**APPROVED AND AGREED AS TO FORM:**

/s/ _John G. Helstowski_
John G. Helstowski
Texas Bar No. 24078653
5209 Heritage Ave., Suite 510
Colleyville, TX 76034
Telephone: (817) 382-3125
Facsimile: (817) 382-1799

Email: jgh@jghfirm.com
Attorney for Plaintiffs

# EXHIBIT A-4



## FELICIA PITRE, DISTRICT CLERK
## REGISTRY DEPOSIT INFORMATION SHEET
## FOR MINORS, INTERPLEADERS & CASH BONDS

CASE # *DC-24-17440-A*          AMOUNT *$2,600.00*
                                CHECK # _____
                                AMOUNT _____
BOND TYPE *T.R.O.*              CHECK # _____
CASE STYLE *Reginald Elam* vs. *Deutsche Bank Trust*

ARE THESE FUNDS TO BE INVESTED? _____ YES  ✓ NO

TAX ID #. or SOC. SEC. # _____
*(TRUST MUST HAVE A COPY OF THE SOCIAL SECURITY CARD TO HAVE FUNDS INVESTED)*

PARTY NAME or MINOR'S NAME _____
                                   *(REQUIRED)*

MINOR'S DATE OF BIRTH _____
                                *(REQUIRED)*

MINOR'S PARENT OR GUARDIAN NAME & ADDRESS, PH. # & DRIVERS LICENSE #____

_____ PH.#_____ D.L.#_____
                                      *(REQUIRED)*          *(REQUIRED)*

PLAINTIFF ATTY._____ DEFENDANT ATTY. or GAL._____
ADDRESS_____ ADDRESS_____

_____

PHONE # *817 382-3125*        PHONE # _____

NOTE: REGISTRY FUNDS WILL BE INVESTED ONLY IF A COPY OF SOCIAL SECURITY OR TAX ID NUMBER IS PROVIDED.

TYPES OF INTEREST BEARING ACCOUNTS ALLOWED PER SECTION 117.053 OF THE LOCAL GOVERNMENT CODE: INTERLOCAL INVESTMENT POOLS, LOCAL INTEREST BEARING DEPOSITS THAT ARE FDIC INSURED (CD, MMA'S, SAVINGS ACCOUNTS), UNITED STATES TREASURY BILLS AND NO LOAD MONEY MARKET MUTUAL FUNDS. ALL OF THESE INTEREST BEARING VEHICLES ARE SUBJECT TO THE STRICT GUIDELINES SET FORTH IN SECTION 117.053 OF THE LOCAL GOVERNMENT CODE. *A FEE OF 10% OF THE INTEREST EARNED WILL BE ASSESSED AT THE TIME OF WITHDRAWAL ON INVESTED ACCOUNTS PER SECTION 117.122 OF THE LOCAL GOVERNMENT CODE.

IT IS DISTRICT CLERK POLICY REGARDING FINAL JUDGMENTS TO WAIT 30 DAYS TO DISPERSE REGISTRY FUNDS. THIS IS DUE TO THE FACT THAT THE CASE CAN BE APPEALED WITHIN 30 DAYS. THE EXCEPTION TO THIS IS: AGREED FINAL JUDGMENTS, OR THE FINAL JUDGMENT CONTAINS WORDING ORDERING THE DISTRICT CLERK TO FORGO THE 30 DAY WAIT. ALSO A NON-JUDGMENT ORDER OF THE COURT WILL SUFFICE IN ORDER TO RELEASE COURT REGISTRY FUNDS IMMEDIATELY. THE DISTRICT CLERK TRUST OFFICE WILL ALSO WAIT TO DISBURSE FUNDS FROM THE COURT'S REGISTRY IF THE DEPOSIT WAS RECENTLY MADE BY CHECK. THIS WILL ALLOW THE TRUST OFFICE ENOUGH TIME TO SEE IF THE CHECK HAS CLEARED.

IT IS THE RESPONSIBILITY OF THE ATTORNEYS OF RECORD TO SUBMIT A COURT ORDER TO REQUEST A DISBURSEMENT OF ANY MONIES DEPOSITED IN LIEU OF BOND OR INTERPLEADER ACTIONS AND TIMELY NOTIFY THE TRUST DEPARTMENT OF ANY INVESTMENT OR WITHDRAWAL. IF YOU WIRE TRANSFER FUNDS INTO THE COURT'S REGISTRY, THEN YOU NEED TO FILL OUT A REGISTRY DEPOSIT FORM LOCATED UNDER DOWNLOADABLE FORMS ONLINE UNDER THE DISTRICT CLERK'S WEB SITE www.dallascounty.org/department/districtclerk/districtclerk_index.html AND SUBMIT A COPY TO THE D.C. TRUST OFFICE.

SIGNATURE _____ DATE *10/1/2024*

# OFFICIAL RECEIPT
## DALLAS COUNTY OFFICIAL RECEIPT FELICIA PITRE, DISTRICT CLERK

Payor
J GANNON HELSTOWSKI LAW FIRM PC

Receipt No.
**68850-2024-DCLK**

Transaction Date
10/01/2024

| Description | Amount Paid |
|---|---|
| On Behalf Of  ELAM, REGINALD | |
| DC-24-17440 | |
| REGINALD ELAM vs. DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION, et al | |
| Bond Account | |
| CASH BOND DEPOSIT (CIVIL) | 2,600.00 |
| **SUBTOTAL** | **2,600.00** |

**PAYMENT TOTAL** | **2,600.00**

| | |
|---|---|
| CHECK (Ref #1903) Tendered | 2,600.00 |
| Total Tendered | **2,600.00** |
| Change | 0.00 |

| 10/01/2024 | Cashier | Audit |
|---|---|---|
| 09:51 AM | Station DC167 | 97875416 |

## OFFICIAL RECEIPT

Reginald Elam

Vs

Deutsche Bank Trust
Company, National
Association, et al

Oct 24 17400

FILED

24 OCT -1 AM 9: 53

CHRISTIE
DEPUTY CLERK
NORTHERN DISTRICT, TEXAS

_____ DEPUTY

# EXHIBIT A-5

FILED
10/22/2024 12:15 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Margaret Thomas DEPUTY

CAUSE NO. <u>DC-24-17440</u>

| | | |
|---|---|---|
| **REGINALD ELAM,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEUTSCHE BANK TRUST COMPANY,** | § | |
| **NATIONAL ASSOCIATION, as Trustee** | § | **14TH JUDICIAL DISTRICT** |
| **for HSI Asset Corporation Trust 2006-** | § | |
| **HEI, Mortgage Pass-Through Certificate,** | § | |
| **Series 2006-HE1., and NEWREZ LLC,** | § | |
| **d/b/a SHELLPOINT MORTGAGE** | § | |
| **SERVICING, its/their successors and/or** | § | |
| **assigns,** | § | |
| | § | **OF DALLAS COUNTY, TEXAS** |
| **Defendants.** | | |

<u>**PLAINTIFF'S UNOPPOSED MOTION TO EXTEND TEMPORARY RESTRAINING**</u>
<u>**ORDER AND RESCHEDULE TEMPORARY INJUNCTION HEARING**</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Reginald Elam, hereinafter called Plaintiff ("Plaintiff"), Plaintiff in the

above styled and numbered cause, and pursuant to TRCP 680 hereby moves this Court to extend

the Temporary Restraining Order previously entered in this cause and to reschedule the current

hearing setting for the Temporary Injunction hearing, and in support thereof would respectfully

show unto the Court as follows:

**I.**

<u>**PROCEDURAL HISTORY**</u>

1.    On September 27, 2024, Plaintiff filed his *Plaintiff's Original Verified Petition and*

*Application for Temporary Restraining Order and Temporary Injunction* ("Petition") in the above

styled and numbered cause.

2.    On September 30, 2024, the Court signed and entered a Temporary Restraining

Order ("TRO"), wherein Defendants Deutsche Bank and Newrez LLC dba Shellpoint Mortgage Servicing, it's/their successors and or assigns, ("Defendants"), were prevented from taking certain actions against Plaintiff, namely the Defendants were ordered to cease and desist from all efforts to foreclose on Plaintiff's homestead property made the subject of this suit. The TRO further provided that the Plaintiff must post a cash bond in the amount of $2,600.00 before the TRO could take effect.

3.     The TRO further contained a hearing setting for a Temporary Injunction hearing to be heard on October 14, 2024, at 10:00 a.m.

4.     On October 1, 2024, Plaintiff's attorney posted the required cash bond in the amount of $2,600.00 with the Dallas County District Clerk.

5.     The Court automatically reset the Temporary Injunction hearing date to October 28, 2024 at 10:00 a.m.

5.     On or about October 1, 2024, Plaintiff filed his request to issue citations and TRO notices. As of date hereof, the clerk has not yet issued the requested citations and TRO notices as they are in need of an amended Temporary Restraining Order with the new temporary injunction hearing date that the court reset on its own. Therefore, Defendants have not yet been formally served.

6.     As of the date hereof, no appearance has been made by any attorney for the Defendants, although the Defendants local foreclosure counsel has been provided with copies of the filed Petition, signed TRO, and bond receipt.

## II.

## UNOPPOSED MOTION TO EXTEND TEMPORARY RESTRAINING ORDER AND TO RE-SCHEDULE TEMPORARY INJUNCTION HEARING

7.     Accordingly, pursuant to TRCP Rule 680, Plaintiff hereby requests that the TRO

be extended one time for up to fourteen (14) days from October 28, 2024, for the reasons that the Defendants has not yet been formally served, and no appearance or answer has been filed by any attorney on behalf of the Defendants.

8.     TRCP Rule 680 provides in pertinent part as follows:

> *"…and shall expire by its own terms within such time after signing, not to exceed fourteen days, <u>unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period</u>…"* (emphasis added).

9.     TRCP Rule 680 provides the only method for extending a [TRO] beyond 14 days. Rule 680 governs an extension of a [TRO], whether issued with or without notice, and permits but one extension for no longer than fourteen (14) days unless the restrained party agrees to a longer extension. *In re Texas Nat. Res. Conserv. Comm'n*, 85 S.W.3d 201, 204-05 (Tex.2002).

10.     Therefore, in the interest of justice and fairness, and for good cause shown, Plaintiff hereby requests that the Court cancel the current setting of the Temporary Injunction hearing scheduled on  October 28, 2024, and extend the TRO for a period of up to fourteen (14) days from October 28, 2024, and reschedule the Temporary Injunction hearing to a date and time before the expiration of the fourteen (14) day period from October 28, 2024.

11.     No party will be harmed or prejudiced by the Court's granting of the relief requested herein, and no party is opposed since no attorney has appeared herein on behalf of the Defendants, who are the only Defendants against whom injunctive relief is sought.

12.     This motion is not brought for purposes of delay or harassment, but rather so that justice may be done.

13.     Plaintiff further avers that the bond previously posted by Plaintiff for the TRO is sufficient and that no further bond is necessary to extend the TRO.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that the

Court enter an Order canceling the current hearing setting for the Temporary Injunction hearing that is currently scheduled on October 28, 2024, and for good cause shown, extend the TRO for a period of up to fourteen (14) days from October 28, 2024, and reschedule the Temporary Injunction hearing on a date and time within the extended fourteen day period from October 28, 2024, and for such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**J. GANNON HELSTOWSKI LAW FIRM**

**/s/ John G. Helstowski**
John G. Helstowski
Texas State Bar No. 24078653
5209 Heritage Ave, Suite 510
Colleyville, Texas 76034
Telephone – (817) 382-3125
Facsimile – (817) 382-1799
Email: jgh@jghfirm.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2024, a true and correct copy of the foregoing *Plaintiff's Unopposed Motion to Extend Temporary Restraining Order and Reschedule Temporary Injunction Hearing* was served upon all parties and counsel of record in this cause.

**/s/ John G. Helstowski**
John G. Helstowski
Attorney for Plaintiff

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to the filing of the foregoing *Plaintiff's Unopposed Motion to Extend Temporary Restraining Order and Reschedule Temporary Injunction Hearing*, I attempted to confer with counsel, but since no counsel has appeared herein on behalf of the Defendants, and the Defendants have not been served or otherwise filed an answer or appeared herein. and therefore, a good faith effort was made to confer but no conference could be had so the matter is submitted to the Court for determination of the merits.

*/s/ John G. Helstowski*

John G. Helstowski
Attorney for Plaintiff

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

John Helstowski
Bar No. 24078653
jgh@jghfirm.com
Envelope ID: 93428260
Filing Code Description: Motion - Extend
Filing Description: PLAINITFF TRO RESCHEDULE TEMP INJ
Status as of 10/22/2024 12:22 PM CST

Associated Case Party: REGINALD ELAM

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Helstowski | | jgh@jghfirm.com | 10/22/2024 12:15:00 PM | SENT |

# EXHIBIT A-6

FILED
11/4/2024 10:17 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Janieshia Reed DEPUTY

FORM NO. 353-3 - CITATION
THE STATE OF TEXAS

To:   NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING
      C/O CORPORATION SERVICE COMPANY
      211 EAST 7TH STREET SUITE 620
      AUSTIN TEXAS 78701

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written
answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of
twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition
to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this
suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find
out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **14th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **REGINALD ELAM**

Filed in said Court **27th day of September, 2024** against

**DEUTSCHE BANK TRUST COMPANY AND NEWREZ LLC D/B/A SHELLPOINT MORTGAGE
SERVICING**

For Suit, said suit being numbered **DC-24-17440,** the nature of which demand is as follows:
Suit on **PROPERTY** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not
served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 24th day of October, 2024.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
   DANIEL MACIAS



---

**ESERVE**

**CITATION**

**DC-24-17440**

**REGINALD ELAM**
vs.
**DEUTSCHE BANK TRUST COMPANY,
NATIONAL ASSOCIATION, et al**

ISSUED THIS
**24th day of October, 2024**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: DANIEL MACIAS, Deputy

**Attorney for Plaintiff**
**JOHN G. HELSTOWSKI**
J. GANNON HELSTOWSKI LAW FIRM
5209 HERITAGE AVE SUITE 510
COLLEYVILLE TEXAS 76034
817-382-3125
**JGH@JGHFIRM.COM**

**DALLAS COUNTY
SERVICE FEES
NOT PAID**

## OFFICER'S RETURN

Case No. : DC-24-17440

Court No. 14th District Court

Style: REGINALD ELAM

vs.

DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION, et al

Came to hand on the _____ day of _____ , 20 _____ , at _____ o'clock _____ .M. Executed at _____ ,

within the County of _____ at _____ o'clock _____ .M. on the _____ day of _____ ,

20 _____ , by delivering to the within named _____

_____

each in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:  To certify which witness my hand.

|  |  |  |  |
|---|---|---|---|
| For serving Citation | $_____ | _____ |  |
| For mileage | $_____ | of _____ County, _____ |  |
| For Notary | $_____ | By _____ Deputy |  |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____ , 20 _____ ,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County _____

CAUSE NO. <u>DC-24-17440</u>

| | | |
|---|---|---|
| **REGINALD ELAM,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEUTSCHE BANK TRUST COMPANY,** | § | |
| **NATIONAL ASSOCIATION, as Trustee** | § | **14th JUDICIAL DISTRICT** |
| **for HIS Asset Corporation Trust 22006-** | § | |
| **HEI, Mortgage Pass-Through Certificate,** | § | |
| **Series 2006-HE1, and NEWREZ LLC,** | § | |
| **d/b/a SHELLPOINT MORTGAGE** | § | |
| **SERVICING, its successors and/or** | § | |
| **assigns,** | § | **OF DALLAS COUNTY, TEXAS** |
| | | |
| **Defendant.** | | |

**Documents:** <u>**CITATION WITH ATTACHED PLAINTIFF'S ORIGINAL VERIFIED PETITION**</u>

Received on: <u>October 24, 2024 at 3:30 p.m.</u> the above documents to be delivered to:

> NewRez LLC d/b/a Shellpoint Mortgage Servicing
> c/o Corporation Service Company
> 211 East 7th Street, Suite 620
> Austin, Texas 78701

I, Ronald Wade Monroe, the undersigned, being duly sworn, deposed and say that I am duly authorized to make delivery of the document(s) listed herein in the above style case. I am over the age of 18, and I am not a party to or otherwise interested in this matter. Delivery of said documents occurred in the following manner:

By delivery to: <u>Corporation Service Company – Registered Agent for NewRez LLC dba Shellpoint Mortgage Servicing</u>

Title/Relationship: <u>Registered Agent</u>

Address of Service: <u>211 East 7th Street, Suite 620, Austin, Texas</u>

Date/Time of Service: <u>10/29/2024 at 9:00 a.m.</u>

Type of Service: <u>Certified mail return receipt requested.</u>

Ronald Wade Monroe II, Private Process Server
ID number PSC-11829, Expiring July 31, 2025

Signed and sworn to by the said, Ronald Wade Monroe II before me this _____ th day of _NOV_.,
2024, to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas

My Commission expires _10/29/2028_

(Seal)

Amanda J Norton
My Commission Expires
10/29/2028
Notary ID 126566321

# EXHIBIT "A"

SENDER: COMPLETE THIS SECTION

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Newrez LLC dba Shellpoint Mortgage Co
c/o Corporation Service Company
211 E 7th St Ste 620
Austin TX 78701-3218

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9490 9112 0820 5443 6325 15

2. Article Number (Transfer from service label)
9402 7112 6520 5443 6624 79

PS Form 3811 Facsimile, July 2015 (SDC 3930)

COMPLETE THIS SECTION ON DELIVERY

A. Signature: (□ Addressee or □ Agent)

X _____

B. Received By: (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type

☑ Certified Mail®

Domestic Return Receipt

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

John Helstowski
Bar No. 24078653
jgh@jghfirm.com
Envelope ID: 93880082
Filing Code Description: Return Of Service
Filing Description: EXECUTED CITATION - NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING
Status as of 11/6/2024 8:51 AM CST

Associated Case Party: REGINALD ELAM

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Helstowski | | jgh@jghfirm.com | 11/4/2024 10:17:18 AM | SENT |

# EXHIBIT A-7

FILED
11/11/2024 10:38 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO. TEXAS
Janeishia Reed DEPUTY

Case 3:24-cv-02988-E-BT    Document 1-1    Filed 11/27/24    Page 111 of 136    PageID 117

**FORM NO. 3534 CITATION**
**THE STATE OF TEXAS**

To:    **DEUTSCHE BANK TRUST COMPANY**
       **C/O TEXAS SECRETARY OF STATE**
       **CITATIONS UNIT, JAMES E. RUDDER BLDG**
       **1019 BRAZOS, ROOM 105**
       **AUSTIN, TEXAS 78701**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with    the clerk who issued this citation by 10 o'clock a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **14th District Court** at 600 Commerce Street, Dallas Texas. 75202.

Said **PLAINTIFF** being    **REGINALD ELAM**

Filed in said Court on the 27th day of September, 2024 against

**DEUTSCHE BANK TRUST COMPANY AND NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

For suit, said suit being numbered    **DC-24-17440**    the nature of which demand is as follows:
Suit On **PROPERTY** etc.
as shown on said petition a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas.
Given under my hand and the Seal of said Court at office on **this the 24th day of October, 2024**
ATTEST: FELICIA PITRE Clerk of the District Courts of Dallas, County, Texas



By _____, Deputy
            **DANIEL MACIAS**

---

**ESERVE (SOS)**

**CITATION**

No.: **DC-24-17440**
**REGINALD ELAM**
vs.
**DEUTSCHE BANK TRUST COMPANY,**
**NATIONAL ASSOCIATION, et al**

**ISSUED**
**ON THIS THE 24TH DAY OF**
**OCTOBER, 2024**

FELICIA PITRE
Clerk District Courts.
Dallas County, Texas

By **DANIEL MACIAS**, Deputy

Attorney for : Plaintiff
**JOHN G. HELSTOWSKI**
J. GANNON HELSTOWSKI LAW FIRM
5209 HERITAGE AVE SUITE 510
COLLEYVILLE TEXAS 76034
817-382-3125
**JGH@JGHFIRM.COM**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

Cause No. DC-24-17440
Court No: 14th District Court

Style: REGINALD ELAM
vs.
DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION, et al

**OFFICER'S RETURN**
**FOR INDIVIDUALS**

Received this Citation the _____ day of _____, 20 _____ at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20 _____, at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first endorsed on same the date of delivery.

---000000---

**OFFICER'S RETURN**
**FOR CORPORATIONS**

Received this Citation the _____ day of _____, 20 _____ at _____ o'clock _____ M. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20 _____, at _____ o'clock _____ M. by summoning the within named Corporation, _____ President – Vice President – Registered Agent - in person, of the said

a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first endorsed on same the date of delivery.

---000000---

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:      To certify which witness by my hand.

| | | |
|---|---|---|
| For Serving Citation | $ _____ | Sheriff |
| For Mileage | $ _____ | County of _____ |
| For Notary | $ _____ | State of _____ |
| Total Fees | $ _____ | By _____ Deputy |

(Must be verified if served outside the State of Texas)
State of _____
County of _____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20 _____, to certify which witness my hand and seal of office.

_____
State & County of

Seal

## CAUSE NO. <u>DC-24-17440</u>

| | | |
|---|---|---|
| **REGINALD ELAM,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DEUTSCHE BANK TRUST COMPANY,** | § | |
| **NATIONAL ASSOCIATION, AS Trustee** | § | **14th JUDICIAL DISTRICT** |
| **FOR HIS Asset Corporation Trust 2006-** | § | |
| **HEI, Mortgage Pass-Through Certificate,** | § | |
| **Series 2006-HE1, and NEWREZ LLC,** | § | |
| **d/b/a SHELLPOINT MORTGAGE** | § | |
| **SERVICING, its/their successors and/or** | § | |
| **assigns,** | § | |
| | § | |
| **Defendants.** | § | **OF DALLAS COUNTY, TEXAS** |

**Documents:**  <u>**CITATION  WITH  ATTACHED  PLAINTIFF'S  ORIGINAL  VERIFIED PETITION**</u>

Received on: <u>October 24, 2024 at 3:30 p.m.</u> the above documents to be delivered to:

> Deutsche Bank Trust Company
> c/o Texas Secretary of State
> James E. Rudder Building
> 1019 Brazos Room 105
> Austin, Texas 78701

I, Ronald Wade Monroe, the undersigned, being duly sworn, deposed and say that I am duly authorized to make delivery of the document(s) listed herein in the above style case. I am over the age of 18, and I am not a party to or otherwise interested in this matter. Delivery of said documents occurred in the following manner:

By delivery to: <u>Texas Secretary of State</u>

Title/Relationship: <u>Texas Secretary of State</u>

Address of Service: <u>1019 Brazos, Room 105, Austin, TX 78701</u>

Date/Time of Service: <u>10/30/2024 at 9:00 a.m.</u>

Type of Service: <u>Certified mail return receipt requested.</u>

Ronald Wade Monroe II, Private Process Server
ID number PSC-11829, Expiring July 31, 2025

Signed and sworn to by the said, Ronald Wade Monroe II before me this _____11_____ th day of _Nov._,
2024, to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas

My Commission expires _10/29/2028_

(Seal)

Amanda J Norton
My Commission Expires
10/29/2028
Notary ID 126566321

# EXHIBIT "A"

SENDER: COMPLETE THIS SECTION

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Deutsche Bank Trust Company
c/o Texas Secretary of State
1019 Brazos St Rm 105
Austin TX 78701-2413

9490 9112 0820 5443 6534 68

2. Article Number (Transfer from service label)
9402 7112 0620 5443 6534 53

PS Form 3811 Facsimile, July 2015 (SDC 3930)

COMPLETE THIS SECTION ON DELIVERY

A. Signature: (☐ Addressee or ☐ Agent)
✗ Comptroller Mail

B. Received By: (Printed Name)          C. Date of Delivery
OCT 30 2024

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

John Helstowski
Bar No. 24078653
jgh@jghfirm.com
Envelope ID: 94139143
Filing Code Description: Return Of Service
Filing Description: EXECUTED CITATION SOS -  DEUTSCHE BANK
TRUST COMPANY
Status as of 11/18/2024 11:44 AM CST

Associated Case Party: REGINALD ELAM

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Helstowski | | jgh@jghfirm.com | 11/11/2024 10:38:43 AM | SENT |

# EXHIBIT A-8

FILED
11/21/2024 11:41 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Margaret Thomas DEPUTY

## CAUSE NO. DC-24-17440

| | | |
|---|---|---|
| REGINALD ELAM, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | 14TH JUDICIAL DISTRICT |
| | § | |
| DEUTSCHE BANK TRUST COMPANY, | § | |
| NATIONAL ASSOCIATION, AS | § | |
| TRUSTEE FOR HSI ASSET | § | |
| CORPORATION TRUST 2006-HEI, | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATE, SERIES 2006-HEI., | § | |
| AND NEWREZ LLC, D/B/A | § | |
| SHELLPOINT MORTGAGE | § | |
| SERVICING, ITS/THEIR SUCCESSORS | § | |
| AND/OR ASSIGNS, | § | |
| | § | DALLAS COUNTY, TEXAS |
| *Defendants.* | | |

## DEFENDANTS DEUTSCHE BANK TRUST COMPANY'S AND NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING'S ORIGINAL ANSWER TO PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR <u>TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION</u>

Defendants Deutsche Bank Trust Company, National Association, as Trustee for HSI Asset Corporation Trust 2006-HEI Mortgage Pass-Through Certificate, Series 2006-HEI, ("<u>Deutsche Bank as Trustee</u>") and Newrez LLC d/b/a Shellpoint Mortgage Servicing ("<u>Shellpoint</u>") (Deutsche Bank as Trustee and Shellpoint together are "<u>Defendants</u>") answer Plaintiff Reginald Elam's ("<u>Elam</u>") Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction (the "<u>Petition</u>"), as follows:

### GENERAL DENIAL

1.    Deutsche Bank as Trustee and Shellpoint generally deny the allegations in Elam's Petition and demand strict proof thereof by a preponderance of the evidence.

### AFFIRMATIVE DEFENSES

To answer further, Deutsche Bank as Trustee and Shellpoint assert the following affirmative defenses, assuming no additional burden or any burden not placed on them by the law, and assert that the defenses bar Elam's claims and/or right to recover—in whole or in part—the damages and relief alleged:

2.      Elam fails to state a claim for which relief can be granted.

3.      Elam's claims fail, in whole or in part, because he failed to comply with all conditions precedent to recovery.

4.      Elam's breach of contract claim fails because he first materially breached the contract(s) upon which he sues.

5.      Elam's claims fail because he has not been damaged.

6.      Elam's claims are barred, in whole or in part, by the economic loss rule.

7.      Elam's claims fail, in whole or in part, because he failed to mitigate damages.

8.      Elam's claims are barred, in whole or in part, to the extent such claims result from Elam's contributory negligence.

9.      Elam's claims are barred, in whole or in part, by the doctrine of waiver.

10.     Elam's claims are barred, in whole or in part, by comparative fault.

11.     Elam's claims are barred, in whole or in part, by the doctrine of release.

12.     Elam's claims are barred, in whole or in part, by the doctrines of estoppel and unclean hands.

13.     Elam's claims are barred, in whole or in part, because the actions complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

14.     To the extent Elam recovers any damages, such damages must be offset by the amount Elam owes Deutsche Bank as Trustee and/or Shellpoint under the subject loan.

15.     To the extent Elam recovers any exemplary damages, any such damages must be capped under the Texas Damages Act, the Due Process Clause of the United States Constitution, and the Due Course of Law provisions of the Texas Constitution

## I.      PRAYER

WHEREFORE PREMISES CONSIDERED, Deutsche Bank as Trustee and Shellpoint pray that Reginald Elam take nothing by way of his Petition and that Deutsche Bank as Trustee and Shellpoint have judgment for their costs and for such other and further relief to which it may show itself justly entitled.

Date: November 21, 2024                    Respectfully Submitted,

                                **HUSCH BLACKWELL LLP**

                                By: */s/ Lauren Hayes*
                                    Lauren E. Hayes
                                    Texas Bar No. 24081961
                                    lauren.hayes@huschblackwell.com
                                    Tyler Crews
                                    Texas Bar No. 24144565
                                    tyler.crews@huschblackwell.com

                                111 Congress Ave, Suite 1400
                                Austin, Texas 78701
                                (512) 472-5456
                                (512) 479-1101 (fax)

                                **COUNSEL FOR DEFENDANTS DEUTSCHE
                                BANK AS TRUSTEE AND SHELLPOINT**


                        **<u>CERTIFICATE OF SERVICE</u>**

    The undersigned hereby certifies that a true and correct copy of the foregoing document was served on counsel of record on November 21, 2024.


                                */s/ Lauren Hayes*
                                Lauren E. Hayes

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Garcia on behalf of Lauren Hayes
Bar No. 24081961
carmen.garcia@huschblackwell.com
Envelope ID: 94561625
Filing Code Description: Original Answer - General Denial
Filing Description: Defendants' Original Answer to Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction
Status as of 11/21/2024 11:45 AM CST

Associated Case Party: REGINALD ELAM

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Helstowski | | jgh@jghfirm.com | 11/21/2024 11:41:48 AM | SENT |

Associated Case Party: DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lauren Hayes | | Lauren.Hayes@huschblackwell.com | 11/21/2024 11:41:48 AM | SENT |
| Tyler Crews | | Tyler.Crews@huschblackwell.com | 11/21/2024 11:41:48 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Denee Elliott Modgling | | denee.elliottmodgling@huschblackwell.com | 11/21/2024 11:41:48 AM | SENT |
| Elizabeth Spivey | | Elizabeth.Spivey@huschblackwell.com | 11/21/2024 11:41:48 AM | SENT |

# EXHIBIT A-9

14TH JUDICIAL DISTRICT COURT
GEORGE L. ALLEN COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS 75202-4604

11/25/2024

File Copy

DC-24-17440
REGINALD ELAM  vs.  DEUTSCHE BANK TRUST COMPANY, NATIONAL
ASSOCIATION, et al

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTING:

**NON - JURY TRIAL**:          **September 23, 2025** at **9:30 AM**

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL
RULES OF THE CIVIL COURTS OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED
READY. IF PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE
DISMISSED FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS
RULES OF CIVIL PROCEDURE.

***Counsel and Parties should pay particular attention to the Emergency Orders of the Supreme
Court of Texas as well as the Emergency Orders of the Civil District Courts sitting in Dallas
County and of this Court.  Note that deadlines contained herein which refer to the Initial Trial
Setting or of the date of filing shall **NOT** change when the trial setting is moved unless
specifically noted in an Order of this Court.***

Sincerely,

ERIC V. MOYÉ, DISTRICT JUDGE
14TH DISTRICT COURT
Dallas County, Texas

Cc:
LAUREN ELIZABETH HAYES
111 CONGRESS AVE STE 1400
AUSTIN TX 78701-4093
JOHN GANNON HELSTOWSKI
P O BOX 131169
DALLAS TX 75313

# EXHIBIT A-10

CAUSE NO. DC-24-17440-A

| | | |
|---|---|---|
| REGINALD ELAM | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | |
| | § | 14TH JUDICIAL DISTRICT |
| DEUTSCHE BANK TRUST | § | |
| COMPANY, NATIONAL | § | |
| ASSOCIATION, et al | § | STATE OF TEXAS |

## UNIFORM SCHEDULING ORDER (LEVEL 2)

In accordance with Rules 166, 190 and 192 of the Texas Rules of Civil Procedure, the Court makes the following order to control discovery and the schedule of this cause:

1.    This case will be ready and is set for **NON JURY TRIAL SEPTEMBER 23, 2025 at 9:30 a.m.** (the "Initial Trial Setting").  All counsel of record as well as all parties are required to appear at the Initial Trial Setting.  Reset or continuance of the Initial Trial Setting will not alter any deadlines established in this Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order.  If not reached as set, the case may be carried to the next week.  **FAILURE TO COMPLY WITH THE DEADLINES CONTAINED HEREIN SHALL NOT SUPPORT A MOTION TO CONTINUE THIS MATTER.**

2.    Unless otherwise ordered, discovery in this case will be controlled by:

( **X** )    Rule 190.3 (Level 2)

of the Texas Rules of Civil Procedure. Except by agreement of the party, Leave of court, or where expressly authorized by the Texas Rules of Civil Procedure, no party may obtain discovery of information subject to disclosure under Rule 194 by any other form of discovery.

3.    Any objection or motion to exclude or limit expert testimony due to qualification of the expert or reliability of the opinions must be filed no later than seven (7) days after the close of the discovery period, or such objection is waived.  Any motion to compel responses to discovery (other than relation to factual matters arising after the end of the discovery period) must be filed no later than seven (7) days after the close of the discovery period or such complaint is waived, except for the sanction of exclusion under Rule 193.6.

4.    Any amended pleadings asserting new causes of action or affirmative defenses must be filed no later than thirty (30) days before the end of the discovery period and any other amended pleadings must be filed no later than seven (7) days after the end of the discovery period.  Amended pleadings responsive to timely filed pleadings under this schedule may be filed after the deadline for amended pleadings if filed within two (2) weeks after the pleading to which they respond.  Except with leave of court, TRCP 166a(c) motions must be heard no later than thirty (30) days before trial.

5.      No additional parties may be joined more than five (5) months after the commencement of this case except on motion for leave showing good cause. This paragraph does not otherwise alter the requirements of Rule 38. The party joining an additional party shall serve a copy of this order on the new party concurrently with the pleading joining that party.

6.      No Motion or Brief filed with the Court may exceed 25 one-sided pages in length. Only one appendix, also limited to 25 one-sided pages in length may be filed supporting any Motion or Brief. The use of any font less than 12 point, or margins less than 1" on each side of a page is hereby prohibited. Additionally, the use of reduced, multiple pages (i.e.: Min-u-script) is hereby prohibited. Permission to file a brief in excess of these page limitations may be granted with leave of the Court upon a showing of compelling reasons. Orders for leave must list each document and page length of each document to be filed.

7.      The parties shall mediate this case no later than thirty (30) days before the Initial Trial Setting, unless otherwise provided by court order. All parties must appear, in person, for scheduled mediation. Mediation will be conducted in accordance with the Standing Dallas County Civil District Court Order Regarding Mediation, which is available from the Dallas County ADR Coordinator. All parties shall contact the mediator to arrange the mediation.

(X)      Unless otherwise ordered by the Court, the parties shall select a mediator by agreement; if the parties are unable to agree on a mediator, they shall advise the Court within one hundred twenty (120) days of the date of this order; the Court will then appoint a mediator.

8a.      Fourteen (14) days before the Initial Trial Setting, in jury trial, the parties shall exchange a list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery; over-designation is strongly discouraged and may be sanctioned. Except for records to be offered by way of business record affidavits, each exhibit must be identified separately and not by category or group designation. Rule 193.7 applies to this designation. On or before ten (10) days before the Initial Trial Setting, the attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this paragraph and attempt to maximize agreement on such matters. By 4 pm on the Thursday before the Initial Trial Setting, the parties shall file with the Court the materials stated in Rule 166(e)-(l), an estimate of the length of trial, designation of deposition testimony to be offered in direct examination, and any motions in limine. Failure to file such materials may result in dismissal for want of prosecution or other appropriate sanction.

8b.      Fourteen (14) days before the Initial Trial Setting, in non-jury cases, the parties shall exchange and file with the Court Proposed Findings of Fact and Conclusions of Law.

Plaintiff/Plaintiff's counsel shall serve a copy of this Order on any currently named defendant(s) answering after this date.

***Note that deadlines contained herein which refer to the Initial Trial Setting or of the date of filing shall NOT change when the trial setting is moved unless specifically noted in an Order of this Court***

**Please refer to the County website for Court specific rules and standard orders**:
http://www.dallascounty.org/government/courts/civil_district/14th/

Plaintiff/Plaintiff's counsel shall serve a copy of this Order on any currently named defendant(s) answering after this date.

**DEADLINES SET FORTH BY THE COURT IN THIS ORDER MAY NOT BE AMENDED EXCEPT BY LEAVE OF THIS COURT.**

SIGNED November 25, 2024

**District Judge**

cc:    Counsel of Record/Pro Se Parties

# EXHIBIT A-11

## Case Information

DC-24-17440 | REGINALD ELAM vs. DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION, et al

| Case Number | Court | Judicial Officer |
|---|---|---|
| DC-24-17440 | 14th District Court | MOYE', ERIC |
| File Date | Case Type | Case Status |
| 09/27/2024 | PROPERTY | OPEN |

## Party

PLAINTIFF
ELAM, REGINALD

Active Attorneys▾
Lead Attorney
HELSTOWSKI, JOHN GANNON
Retained

DEFENDANT
DEUTSCHE BANK TRUST COMPANY, NATIONAL ASSOCIATION

Active Attorneys▾
Lead Attorney
HAYES, LAUREN ELIZABETH
Retained

Attorney
CREWS, TYLER
Retained

DEFENDANT
NEWREZ LLC

Aliases
*DBA* SHELLPOINT MORTGAGE SERVICING

Active Attorneys▾
Lead Attorney
HAYES, LAUREN ELIZABETH
Retained

Attorney
CREWS, TYLER
Retained

## Bond

| Bond Type | Bond Number | Bond Amount | Current Bond Status |
|-----------|-------------|-------------|---------------------|
| TRO CASH BOND | | $2,600.00 | POSTED |

## Events and Hearings

09/27/2024 NEW CASE FILED (OCA) - CIVIL

09/27/2024 ORIGINAL PETITION ▾

ORIGINAL VERIFIED PETITION AND APPLICATION FOR TRO AND TEMPORARY INJUNCTION

Comment
ORIGINAL VERIFIED PETITION AND APPLICATION FOR TRO AND TEMPORARY INJUNCTION

09/27/2024 PROPOSED ORDER/JUDGMENT ▾

Comment
PROPOSED TRO

09/27/2024 CERTIFICATE OF CONFERENCE ▾

CERTIFICATE OF CONFERENCE RE: TRO

Comment
(PL) RE: TRO

09/30/2024 ORDER - TEMPORARY RESTRAINING ▾

ORDER - TEMPORARY RESTRAINING

10/01/2024 REQUEST FOR SERVICE ▾

Comment
REQUEST FOR SERVICE - TRO AND CIT- WAITING ON AMENDED ORDER AND NOTICE FEES

10/01/2024 ISSUE CITATION ▾

ISSUE CITATION - NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING

ISSUE CITATION - DEUTSCHE BANK TRUST COMPANY

10/01/2024 ISSUE TRO ▾

Comment
WAITING ON AMENDED ORDER AND NOTICE FEES

10/03/2024 TRUST RECEIPT ▾

TRUST RECEIPT

10/22/2024 MOTION - EXTEND ▾

PLAINITFF MTN EXTNED TRO & RESCHEDULE TEMP INJ

Comment
PLAINITFF TRO RESCHEDULE TEMP INJ

10/22/2024 PROPOSED ORDER/JUDGMENT ▾

Comment
PROPOSED ORDER EXTENDING TRO & RESCHEDULING TEMP INJ

10/24/2024 CITATION SOS/COI/COH/HAG ▾

Served
10/30/2024

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF COUNTY

Returned
11/11/2024
Comment
DEUTSCHE BANK TRUST COMPANY

10/24/2024 CITATION ▾

Served
10/29/2024

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF COUNTY

Returned
11/04/2024
Comment
NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING

10/28/2024 Temporary Injunction ▾

Judicial Officer
MOYE', ERIC

Hearing Time
10:00 AM

Cancel Reason
REQUESTED BY ATTORNEY/PRO SE

11/04/2024 RETURN OF SERVICE ▾

EXECUTED CITATION - NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING

Comment
EXECUTED CITATION - NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING

11/11/2024 RETURN OF SERVICE ▾

EXECUTED CITATION SOS - DEUTSCHE BANK TRUST COMPANY

Comment
EXECUTED CITATION SOS - DEUTSCHE BANK TRUST COMPANY

11/21/2024 ORIGINAL ANSWER - GENERAL DENIAL ▾

DEFENDANT ORIGINAL ANSWER-DEUTSCHE/NEWREZ

11/25/2024 NOTICE OF TRIAL ▾

NOTICE OF TRIAL

Comment
AND LVL 2 S./O MAILED

11/25/2024 SCHEDULING ORDER ▾

SCHEDULING ORDER

Comment
LVL 2

09/23/2025 Non Jury Trial ▾

Judicial Officer
MOYE', ERIC

Hearing Time
9:30 AM

## Financial

ELAM, REGINALD

| | Total Financial Assessment | | | $399.00 |
| | Total Payments and Credits | | | $399.00 |

| 9/27/2024 | Transaction Assessment | | | $350.00 |
| 9/27/2024 | CREDIT CARD - TEXFILE (DC) | Receipt # 68342-2024-DCLK | ELAM, REGINALD | ($213.00) |
| 9/27/2024 | STATE CREDIT | | | ($137.00) |
| 10/1/2024 | Transaction Assessment | | | $5.00 |
| 10/1/2024 | PAYMENT (CASE FEES) | Receipt # 68845-2024-DCLK | ELAM, REGINALD | ($5.00) |
| 10/18/2024 | Transaction Assessment | | | $44.00 |
| 10/18/2024 | CREDIT CARD - TEXFILE (DC) | Receipt # 73010-2024-DCLK | ELAM, REGINALD | ($44.00) |

## Documents

ORIGINAL VERIFIED PETITION AND APPLICATION FOR TRO AND TEMPORARY INJUCTION

CERTIFICATE OF CONFERENCE RE: TRO

ORDER - TEMPORARY RESTRAINING

TRUST RECEIPT

PLAINITFF MTN EXTNED TRO & RESCHEDULE TEMP INJ

ISSUE CITATION - NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING

ISSUE CITATION - DEUTSCHE BANK TRUST COMPANY

EXECUTED CITATION - NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING

EXECUTED CITATION SOS - DEUTSCHE BANK TRUST COMPANY

DEFENDANT ORIGINAL ANSWER-DEUTSCHE/NEWREZ

NOTICE OF TRIAL

SCHEDULING ORDER